**Robert L. PERCELL, Plaintiff,**

*v.*

**INTERNATIONAL BUSINESS MACHINES, INC., Defendant.**

**No. 90–538–CIV–5–D.**

United States District Court, E.D. North Carolina, Raleigh Division.

Feb. 28, 1992.

---

Robert J. Willis, Avery & Jones, Raleigh, N.C., for plaintiff.

Howard E. Manning, Jr., Michael T. Medford, Manning, Fulton & Skinner, Raleigh, N.C., for defendant.

1. The court's dismissal of the bad faith discharge claim under North Carolina common law will not be addressed by the court in this

## ORDER

DUPREE, District Judge.

Plaintiff, Robert L. Percell, brings this action alleging that he was terminated from his position with defendant, International Business Machines, Inc. (IBM), on account of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The matter is presently before the court on plaintiff's motion for a jury trial and plaintiff's motion for reconsideration of the court's order dated May 16, 1991 dismissing an additional claim brought pursuant to 42 U.S.C. § 1981, 765 F.Supp. 297.

These two motions are premised on the same ground, passage of the 1991 Civil Rights Act (the "Act"), which was enacted by Congress on November 21, 1991. The Act made several important changes in Title VII and Section 1981, changes which, if applicable, would be relevant to the present case. Therefore, the key question that must be resolved is whether the Act should be applied retroactively. Plaintiff contends that although this action was brought in 1990 and was thus pending at the time the Act went into effect, the new provisions of the Act should be given retroactive effect and applied to the case sub judice. Defendant, conversely, argues that the Act should operate only prospectively and therefore would only be applicable to actions brought after November 21, 1991.

## I. BACKGROUND

Plaintiff's original complaint was based solely on Title VII. However, plaintiff subsequently amended his complaint to include causes of action for racially discriminatory discharge under 42 U.S.C. § 1981 and for wrongful discharge under North Carolina common law. In this amended complaint plaintiff also sought compensatory and punitive damages. The court dismissed these two claims pursuant to F.R.Civ.P. 12(b)(6).[1]

In regard to the Section 1981 claim the court ruled in its May 19, 1991 order that no cause of action exists under Section

order since plaintiff has not asked for reconsideration of this portion of the court's May 15, 1991 order.

1981 for a discriminatory discharge. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Williams v. First Union National Bank of North Carolina*, 920 F.2d 232, 234 (4th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991). However, Section 101 of the new Act overrules *Patterson* and *Williams* by broadening the scope of Section 1981 to include essentially all forms of racial discrimination in employment which would encompass the discriminatory discharge claim asserted by plaintiff. Section 101 of the new Act states, in pertinent part, as follows:

> For purposes of [Section 1981], the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

As for plaintiff's demand for a jury trial, under the prior version of Title VII this circuit has held that a plaintiff in a Title VII suit is not entitled to a jury trial. *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir.1987). However, Section 102(c) of the Act allows a party seeking compensatory or punitive damages to demand a trial by jury.[2]

Plaintiff also makes the argument that even under the existing law he is entitled to a jury trial in his Title VII claim despite the Fourth Circuit's holding in *Keller*. As support for this argument he points to three recent United States Supreme Court cases that bear indirectly on this issue. *See Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990); *Lytle v. Household Manufacturing, Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). However, in *Lytle*, which involved both Title VII and Section 1981, the Court noted the Fourth Circuit's opinion in *Keller* but expressly declined to consider

the issue of whether that case was correctly decided. *Lytle, supra*, 110 S.Ct. at 1335 n. 1. Nevertheless, plaintiff cites three cases from the Northern District of Alabama which interpreted *Yellow Freight, Lytle* and *Terry* as authorizing jury trials for plaintiffs in Title VII actions. *See Walker v. Anderson Electrical Connectors*, 736 F.Supp. 253 (N.D.Ala.1990), *aff'd on other grounds*, 944 F.2d 841 (11th Cir. 1991); *Walton v. Cowin Equipment Company, Inc.*, 733 F.Supp. 327 (N.D.Ala.1990), *rev'd*, 930 F.2d 924 (11th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991); *Beesley v. Hartford Fire Insurance Company*, 723 F.Supp. 635 (N.D.Ala.1989). However, this court does not agree with the Alabama district court's interpretation of the three Supreme Court cases[3] and, therefore, the court finds that *Keller* was still the controlling law in this circuit prior to the enactment of the new Act on November 21, 1991. Consequently, plaintiff has no right to a jury trial in regard to his Title VII claim under the governing law prior to the new Act. Similarly, plaintiff has no valid claim under Section 1981 under the law prior to enactment of the Act. As such, both of plaintiff's motions hinge on whether the Act applies retroactively.

## II. RETROACTIVITY OF THE ACT

■ Since the passage of the Act, lower courts have been split on the question of whether or not it is to be applied retroactively. The court is aware of at least twenty-four cases that have addressed this issue. In the following cases courts have held that the Act should be applied retroactively: *Joyner v. Monier Roof Title, Inc.*, 784 F.Supp. 872 (S.D.Fla.1992); *Graham v. Bodine Electric Company*, 782 F.Supp. 74 (N.D.Ill.1992); *Bristow v. Drake Street, Inc.*, No. 87 C 4412, 1992 WL 14262 (N.D.Ill., Jan. 21, 1992); *Goldsmith v. City of Atmore*, 782 F.Supp. 106 (S.D.Ala.1992); *Guess v. City of Portage*, No. H 90–276,

---

2. Under the old version of Title VII, neither compensatory nor punitive damages could be recovered by a plaintiff. However, Section 102(b) of the new Act allows for the recovery of compensatory and punitive damages.

3. Apparently, neither does the Eleventh Circuit. *See Walton, supra*.

1992 WL 8722 (N.D.Ind., Jan. 14, 1992); *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (N.D.Cal.1992); *Mojica v. Gannett Company, Inc.*, 779 F.Supp. 94 (N.D.Ill. 1991); *King v. Shelby Medical Center*, 779 F.Supp. 157 (N.D.Ala.1991); *Davis v. Tri-State Mack Distributors, Inc.*, No. LR–C–89–912, 1991 WL 316891 (E.D.Ark., Dec. 16, 1991); *LaCour v. Harris County*, No. H–89–1532, 1991 WL 321020 (S.D.Tex., Dec. 6, 1991); *Watkins v. Bessemer State Technical College*, 782 F.Supp. 581 (N.D.Ala.1992). In addition, two courts in this district have held that the Act is retroactive. *See Leach v. Northern Telecom, Inc.*, No. 90–731–CIV–5–BR (E.D.N.C., Jan. 16, 1992); *Holmes v. Carolina Power & Light Company*, No. 91–508–CIV–5–F (E.D.N.C., Feb. 13, 1992).

Conversely, in the following cases courts have refused to apply the Act retroactively: *Tyree v. Riley*, 783 F.Supp. 877 (D.N.J. 1992); *West v. Pelican Management Services Corporation*, 782 F.Supp. 1132, (M.D.La.1992); *Doe v. Board of County Commissioners*, 783 F.Supp. 1379 (D.Fla. 1992); *Burchfield v. Derwinski*, 782 F.Supp. 532 (D.Fla.1992); *Johnson v. Rice*, No. CIV. A. No. 2:85–CV–1318, 1992 WL 16284 (S.D.Ohio, Jan. 24, 1992); *Khandelwal v. Compuadd Corporation*, 780 F.Supp. 1077 (E.D.Va.1992); *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991); *Hansel v. Public Service Company*, 778 F.Supp. 1126 (D.Col.1991); *High v. Broadway Industries, Inc.*, No. 90–1066–CV–W–3, 1992 WL 33860 (W.D.Mo., Jan. 7, 1992); *James v. American International Recovery, Inc.*, No. 1:89–CV–321, 1991 WL 281734 (N.D.Ga., Dec. 3, 1991).

Any attempt to determine the retroactivity of the Act must begin with the language of the statute. Section 402 of the Act states as follows:

> (a) IN GENERAL.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

> (b) CERTAIN DISPARATE IMPACT CASES.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

The only other language pertaining to retroactivity is found in Section 109 of the Act which covers "protection of extraterritorial employment." Section 109(c) states:

> (c) APPLICATION OF AMENDMENTS.—The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act.

Thus, the only safe assumption from the text of the statute is that the Act is not to be given retroactive effect in certain disparate impact cases or cases involving employees working overseas. Since the case sub judice does not fall within either of these two categories, it is clear that the court's task is not resolved by the words of the statute.

Given the aforementioned retroactivity provisions, two competing inferences may be drawn from them. The first possible inference would be that because Congress identified two instances in which the Act is not to be applied retroactively, Congress intended for retroactive application to all other types of Title VII and Section 1981 cases. Conversely, the second possible inference one could draw is that Congress could agree on the retroactivity issue only in regard to discrimination cases that come under Section 402(b) and Section 109(c) and that for all other cases Congress favored allowing courts to decide the issue.

Since the language of the statute is not clear on the retroactivity question, it is appropriate to look to legislative history to determine whether there is clear congressional intent on the issue. *Kaiser Aluminum & Chemical Corporation v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). Unfortunately, however, the legislative history demonstrates a split of opinion within Congress as to the extent to which the Act would apply retroactively. Indeed, Senator Danforth and Senator Kennedy, the two primary sponsors of the Act, issued a joint memorandum stating their agreement on

every issue except retroactivity. 137 Cong. Rec. S15483 (Oct. 30, 1991). It is obvious from the legislative history that the Democratic senators generally supported Kennedy's view that the Act be applied retroactively in all cases while the Republican senators followed Danforth's position to the contrary. 137 Cong.Rec. S15483–S15485 (Oct. 30, 1991). A similar partisan deadlock occurred in the House of Representatives. *See, e.g.*, 137 Cong.Rec. H9530, H9531, H9548, and H9549 (Nov. 7, 1991). Consequently, because the legislative history is not helpful it is necessary to look to case law to determine the general principles governing the retroactive application of statutory amendments when the answer is not apparent by the text of the statute or through the legislative history.

There are two competing lines of relevant United States Supreme Court precedent in regard to retroactivity. In *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. The *Bradley* court expressly rejected the view that changes in the law should be applied retroactively only where Congress has clearly manifested its intention for such a result. *Id.* at 715, 94 S.Ct. at 2018.

However, in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court stated the following in dicta: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471. While the *Bowen* court did not cite *Bradley*, the Supreme Court has since noted the "apparent tension" between the two cases.[4]

In the four years since *Bowen* was handed down the Fourth Circuit has had only one occasion to deal with a similar retroactivity question. *Leland v. Federal Insurance Administrator*, 934 F.2d 524 (4th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991), raised the question of whether an amendment to the National Flood Insurance Act providing for relocation expenses should be given retroactive effect. In holding that the amendment should only be applied prospectively, the Fourth Circuit relied heavily on *Bowen* for the result. The court interpreted *Bowen* as reaffirming the "longstanding principles" applicable to retroactivity claims which hold that "even where some substantial justification for retroactivity is presented, courts should be reluctant to find such authority absent an express statutory grant." *Id.* at 528.

However, the *Leland* court noted in a footnote that, although the plaintiff had not cited *Bradley*, the same result would have ensued from a *Bradley* analysis since the retroactive application of the amendment would have resulted in distortion of the parties' rights that had been previously set out in an insurance policy. *Id.* at 528 n. 7. Because the court felt that this result would have been a manifest injustice, the court reasoned that retroactivity would be precluded under *Bowen* or *Bradley*. *Id.*

Since the Supreme Court handed down *Bowen*, several circuit courts have recognized the *Bradley/Bowen* split and have simply opted to comply with one and ignore the other. *See, e.g., United States v. Peppertree Apartments*, 942 F.2d 1555, 1560–61 (11th Cir.1991) (applying *Bradley*); *Federal Deposit Insurance Corporation v. Wright*, 942 F.2d 1089, 1095–96 (7th Cir. 1991) (applying *Bradley*); *Simmons v. Lockhart*, 931 F.2d 1226, 1229–30 (8th Cir. 1991) (applying *Bowen*); *ALPO Petfoods, Inc. v. Ralston Purina Company*, 913

4. *Kaiser, supra,* 494 U.S. at 837, 110 S.Ct. at 1577. The *Kaiser* court did not attempt to reconcile *Bradley* and *Bowen* because the congressional intent in regard to the statute at issue in that case was clear. However, in a concurring opinion, Justice Scalia indicated his belief that *Bradley* and *Bowen* were in "irreconcilable contradiction" and that *Bradley* should be overruled. *Id.* 494 U.S. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring).

F.2d 958, 963–64 n. 6 (D.C.Cir.1990) (applying *Bowen* ); *DeVargas v. Mason & Hanger–Silas Mason Company, Inc.*, 911 F.2d 1377, 1388–93 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991) (applying *Bowen* ).

After struggling to reconcile the competing holdings in *Bradley* and *Bowen,* the court is forced to agree with Justice Scalia that the two cases are in "irreconcilable contradiction." *Kaiser, supra,* 494 U.S. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring). However, after a careful and thorough examination of all the relevant case law and memoranda submitted by the parties, the court concludes that the 1991 Civil Rights Act should not be applied retroactively. While there are valid arguments both for and against retroactivity, the court believes that the Supreme Court's holding in *Bowen* is superior to *Bradley* intellectually, historically and as a barometer of the current Supreme Court's views on this issue.[5]

The presumption that a statute should operate only prospectively dates back approximately 150 years. *See Kaiser, supra,* 494 U.S. at 842, 110 S.Ct. at 1579. (Scalia, J., concurring). That rule applied without interruption until the Supreme Court's decision in *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), where the Court retroactively applied a federal regulation limiting the eviction rights of landlords retroactively so as to abrogate an eviction order that had been issued eighteen months earlier. However, in *Thorpe* the Court neglected to address the longstanding presumption against retroactivity or the cases subscribing to that proposition. *Kaiser, supra,* 494 U.S. at 845, 110 S.Ct. at 1581 (Scalia, J., concurring). Furthermore, the cases the *Thorpe* Court did cite for this proposition were misconstrued. *Id.* 494 U.S. at 845–48, 110 S.Ct. at 1581–82.

Five years later the Supreme Court reinforced *Thorpe's* presumption of retroactivity in *Bradley.* *Bradley* mandated retroactive application by an appeals court of a statute authorizing the award of attorney's fees that was enacted while an appeal from the district court was pending. *See Bradley, supra.* However, as in *Thorpe,* the cases relied on in *Bradley* did not support the view that retroactivity is presumed in all cases. Indeed, those cases cited did not even attempt to carve out a general presumption of retroactivity. *Kaiser, supra,* 494 U.S. at 849–50, 110 S.Ct. at 1583–84 (Scalia, J., concurring).

Even prior to *Bowen* the Supreme Court has refused to apply the general presumption of retroactivity set out in *Thorpe* and *Bradley.* In *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Secretary of Education sought to recover from New Jersey funds received pursuant to Title I of the Elementary and Secondary Education Act that had allegedly been misused. New Jersey argued that under *Bradley* the 1978 amendments to Title I—which eased restrictions on the use of such funds—should be applied retroactively to determine whether the funds had been properly spent. The Supreme Court refused to apply the *Bradley* presumption of retroactivity, noting that even *Bradley* acknowledged the inappropriateness of retroactivity when the result would be to violate "a right that had matured or become unconditional,"[6] The *Bennett* court ruled that this limitation was faithful to a fundamental principle of statutory construction, the rule "that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett, supra,* 470 U.S. at 639, 105 S.Ct. at 1560. Thus, even before its pronouncement in *Bowen,* the Supreme Court had

---

**5.** *Bowen,* which was decided in 1988, was a unanimous opinion. Given Justice Scalia's concurring opinion in *Kaiser, supra,* it is clear that he would overrule *Bradley.* Furthermore, in *ALPO Petfoods, supra,* Justice (then Judge) Thomas expressly stated his preference for *Bowen* over *Bradley* in regard to the retroactivity question at issue in that case. *Id.* 913 F.2d at 963–64 n. 6. Conversely, only three members of the *Bradley* majority are currently on the Court and all three were in the majority in *Bowen.*

**6.** *See Bradley, supra,* 416 U.S. at 720, 94 S.Ct. at 2020.

already limited the holding in *Bradley.*[7]

It is not for this court to cavalierly disregard Supreme Court precedent that has not been overruled, even in situations where those precedents do not seem to be steeped in logic or history. Consequently, the court agrees with Justice Scalia that if *Bradley* still has any current significance in light of *Bowen* and *Bennett* it is probably just that the presumption of retroactivity will operate in cases where a change in the law occurs subsequent to the initial adjudication of the matter, *i.e.,* when the change in the law occurs while an appeal from the lower court is pending. *Kaiser, supra,* 494 U.S. at 854, 110 S.Ct. at 1586 (Scalia, J., concurring).[8]

Given the tremendous split that the retroactivity question has engendered among the district courts throughout the country since passage of the 1991 Civil Rights Act, two observations are in order. First, one hopes that Congress will finally realize that they are in a better position than courts are to determine the wisdom of retroactive application of a change in the law. Second, in light of the confusion that has resulted by the uneasy co-existence of the *Bradley* and the *Bowen* lines of authority, the Supreme Court needs to set down coherent rules on when courts should and should not apply statutory changes retroactively where congressional intent is silent. Changes in the law occur with sufficient frequency that retroactivity questions are not unusual. By passively observing lower courts flounder in vain attempts to resolve splits in authority that are incapable of resolution instead of illuminating the darkness by a definitive ruling, the Supreme Court is failing to perform its essential role of providing guidance to lower courts. Hopefully, the Supreme Court will address the retroactivity issue in regard to the Civil Rights Act of 1991 in the near future.

Until that time, however, lower courts will simply have to do the best they can on an issue that has no easy answer.

## III. CERTIFICATION

In certain cases, 28 U.S.C. § 1292(b) permits the interlocutory appeal of orders that are otherwise not appealable. 28 U.S.C. § 1292(b) states, in pertinent part, as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

The court finds that this order holding that the 1991 Civil Rights Act is not retroactive fully satisfies the criteria of 28 U.S.C. § 1292(b) authorizing an interlocutory appeal. As the foregoing analysis makes clear the issue concerns controlling questions of law as to which there are substantial differences of opinion.

In addition, an immediate appeal of this order will benefit every court within this circuit since the retroactivity issue is being raised in virtually every pending case involving Title VII and 42 U.S.C. § 1981. Furthermore, an immediate appeal will avoid a great waste of effort and expense for both this court and the parties to the suit and will materially advance the ultimate termination of the litigation.

For the foregoing reasons the court hereby certifies this order for immediate appeal pursuant to 28 U.S.C. § 1292(b).

---

7. Even if the court were to apply the *Bradley* analysis, it is possible that the same result would ensue. There is a strong argument that retroactive application of a statute creating a new cause of action would fall within *Bradley's* "manifest injustice" exception. Clearly, in the criminal context such retroactive application would be patently violative of the *ex post facto* clause of the Constitution. The same logic dem-

onstrates the unfairness of such a result in the civil context.

8. However, as a policy matter even this limited application of *Bradley* would make little sense. *See Kaiser, supra,* 494 U.S. at 854 and n. 2, 110 S.Ct. at 1586 and n. 2.

## IV. CONCLUSION

Accordingly, for the foregoing reasons plaintiff's motion for a jury trial and for reconsideration of the dismissal of his Section 1981 claim are denied. However, the court certifies this order for immediate appeal pursuant to 28 U.S.C. § 1292(b).

SO ORDERED.