JOHN HAWKINS, Plaintiff v. STATE OF NORTH CAROLINA; N.C. DEPARTMENT OF HUMAN RESOURCES; WESTERN CAROLINA CENTER; J. IVERSON RIDDLE, BOTH INDIVIDUALLY AND IN HIS REPRESENTATIVE CAPACITY AS DIRECTOR OF WESTERN CAROLINA CENTER; PHILLIP J. KIRK, JR., INDIVIDUALLY AND IN HIS REPRESENTATIVE CAPACITY AS SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES; EARLINE BOYD BROWN, INDIVIDUALLY AND IN HER REPRESENTATIVE CAPACITY, RHONDA BENGE, INDIVIDUALLY AND IN HER REPRESENTATIVE CAPACITY, SUZANNE WILLIAMS, INDIVIDUALLY AND IN HER CAPACITY, VICKI CASH, INDIVIDUALLY AND IN HER CAPACITY, AND RALPH KEATON, INDIVIDUALLY AND IN HIS CAPACITY, DEFENDANTS

No. 9225SC154

(Filed 7 February 1995)

**1. Appeal and Error § 112 (NCI4th)— motion to dismiss—sovereign immunity—immediately appealable**

Defendants' appeal from the trial court's denial of defendants' motion to dismiss was properly before the Court of Appeals where defendants asserted the defenses of absolute and qualified immunity. The doctrine of sovereign immunity presents a personal jurisdiction question and the denial of a motion to dismiss on that basis is immediately appealable.

**Am Jur 2d, Appeal and Error §§ 87, 105 et seq.**

**2. Pleadings § 108 (NCI4th)— Rule 12(b)(6) motion to dismiss—test for motion**

The trial court need only look to the face of the complaint when considering a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) to determine whether it reveals an insurmountable bar to plaintiff's recovery.

**Am Jur 2d, Pleading §§ 226 et seq.**

**3. Limitations, Repose, and Laches § 139 (NCI4th)— voluntary dismissal of complaint—savings provision of Rule 41(a)(1)—good faith dismissal**

The trial court did not err in denying defendants' amended motion to dismiss plaintiff's complaint based on the statute of limitations where defendant contended that plaintiff took a voluntary dismissal of his first action in bad faith. There is no evidence of record that plaintiff's sole intent in filing the first complaint was to dismiss it in order to gain another year in which to file a sufficient complaint.

**Am Jur 2d, Limitation of Actions §§ 301 et seq.**

## 4. Constitutional Law § 85 (NCI4th)— 42 U.S.C. 1983—state officials as persons—injunctive relief

The trial court erred by denying defendants' amended motion to dismiss plaintiff's federal claims under 42 U.S.C. 1983 because defendants in their official capacities are not "persons" within the meaning of section 1983 for recovering money damages. Plaintiff cannot contend that defendants in their official capacities are liable for alleged constitutional violations by arguing that defendants' actions were pursuant to a "governmental custom" because the cases on which plaintiff relies involve municipalities, which do not enjoy the same protections from liability that states enjoy. However, defendants are "persons" as to plaintiff's claim for injunctive relief and plaintiff may be able to obtain injunctive relief against defendants in their official capacities if he can state a claim under each of the alleged federal violations.

**Am Jur 2d, Civil Rights §§ 264, 282.**

**Supreme Court's views as to who is "person" under civil rights statute (42 USCS § 1983) providing private right of action for violation of federal rights. 105 L. Ed. 2d 721.**

## 5. Constitutional Law § 115 (NCI4th)— 42 U.S.C. 1983—free speech—refusal to give urine sample

The trial court erred by denying defendants' motion to dismiss as to plaintiff's free speech claim under 42 U.S.C. 1983 arising from his discharge from the Western Carolina Center following his refusal to submit a urine sample as a part of an investigation into missing drugs where the only allegation in plaintiff's complaint of any speech is his assertion that, when asked to give a urine sample, he said that defendants' actions violated his constitutionally protected rights. The record indicates that defendants fired plaintiff because he refused to give the sample, not for his speech. Simply saying that giving a urine sample violates one's rights is not a matter of public concern and does not satisfy the requirement to show that his speech was protected. Because plaintiff's speech was not protected, defendants are insulated from liability by the doctrine of qualified immunity.

**Am Jur 2d, Civil Rights §§ 286, 287.**

**Supreme Court's construction of Civil Rights Act of 1871 (42 USCS § 1983) providing private right of action for violation of federal rights. 43 L. Ed. 2d 833.**

**6. Constitutional Law § 98 (NCI4th)— discharge of state employee—42 U.S.C. 1983 claim—no violation of due process**

Defendants did not violate any clearly established due process rights in terminating plaintiff for refusing to supply a urine sample as part of an investigation into missing drugs and defendants are entitled to qualified immunity as to plaintiff's Fourteenth Amendment due process claim in an action under 42 U.S.C. 1983. Under the doctrine of qualified immunity, plaintiff bears the burden of establishing that the right violated was clearly established. The Administrative Law Judge found that plaintiff and defendants had stipulated that defendants fully complied with the procedural requirements of the state personnel manual relating to the discharge of a State employee and those procedures have been held to fully protect an employee's due process rights.

**Am Jur 2d, Civil Rights § 268.**

**Supreme Court's construction of Civil Rights Act of 1871 (42 USCS § 1983) providing private right of action for violation of federal rights. 43 L. Ed. 2d 833.**

**7. Constitutional Law § 85 (NCI4th)— urine sample— search—42 U.S.C. 1983 claim**

Defendants did not violate any clearly established right in 1986 when they required plaintiff to provide a urine sample as a part of an investigation into missing drugs at plaintiff's workplace. The United States Supreme Court did not declare that a urine test is a search under the Fourth Amendment until 1989; there was no clearly established law that restricted the taking of urine specimens when defendants asked plaintiff to provide a urine sample.

**Am Jur 2d, Civil Rights § 1.**

**Supreme Court's construction of Civil Rights Act of 1871 (42 USCS § 1983) providing private right of action for violation of federal rights. 43 L. Ed. 2d 833.**

**8. Constitutional Law § 85 (NCI4th)— discharge from employment in 1986—42 U.S.C. 1981—not applicable**

Plaintiff did not state a claim pursuant to 42 U.S.C. 1981 for discriminatory discharge from his employment in 1986 because section 1981 did not govern a discriminatory discharge action in

HAWKINS v. STATE OF NORTH CAROLINA

[117 N.C. App. 615 (1995)]

1986. Although the 1991 Civil Rights Act broadened the scope of section 1981, the Fourth Circuit has declined to apply the act retroactively.

**Am Jur 2d, Civil Rights § 248.**

**Supreme Court's construction of Civil Rights Act of 1871 (42 USCS § 1983) providing private right of action for violation of federal rights. 43 L. Ed. 2d 833.**

9. **State § 19 (NCI4th)— action against state officials—sovereign immunity—no waiver**

The State did not waive its immunity with respect to plaintiff's tort claim arising from his discharge as a state employee for refusing a urine test in a drug investigation and may assert absolute immunity as to that claim. Because a suit against public officials and public employees in their official capacities is considered a suit against the State, sovereign immunity protects these individuals from suit. Although the State entered into a contract of employment with plaintiff and the State impliedly consents to be sued for damages on the contract in the event it breaches the contract, neither of plaintiff's state claims are contract claims.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 70, 75 et seq.; States, Territories, and Dependencies §§ 104-107, 119.**

10. **Constitutional Law § 98 (NCI4th); Courts § 3 (NCI4th)— termination of State employee—state constitutional claim against officials—adequate state remedy**

The trial court erred by denying defendants' amended motion to dismiss plaintiff's state constitutional due process claim arising from his dismissal as a state employee for refusing to submit a urine sample as a part of a drug investigation. Plaintiff cannot maintain this action against the State, its agencies, or employees in their official capacity because there exists an adequate state remedy in an administrative review of plaintiff's termination and judicial review in the superior court.

**Am Jur 2d, Civil Rights § 267; Courts §§ 64 et seq.**

**Exhaustion of state administrative remedies as prerequisit to federal civil rights action based on 42 USCS § 1983. 47 ALR Fed. 15.**

HAWKINS v. STATE OF NORTH CAROLINA

[117 N.C. App. 615 (1995)]

11. **Public Officers and Employees §§ 35, 68 (NCI4th); Constitutional Law § 85 (NCI4th)— state officials and state employees—intentional tort claim—no individual immunity**

The trial court did not err by denying defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress arising from plaintiff's dismissal as a state employee for refusing to submit a urine sample as part of a drug investigation where defendants argued that defendants in their individual capacities are immune under the doctrine of qualified immunity. If a party alleges an intentional tort claim, the doctrine of qualified immunity does not immunize public officials or public employees from suit in their individual capacities.

**Am Jur 2d, Civil Rights § 268; Public Oficers and Employees §§ 358 et seq.**

**Supreme Court's views as to application or applicability of doctrine of qualified immunity in action under 42 USCS § 1983, or in *Bivins* action, seeking damages for alleged civil rights violations. 116 L. Ed. 2d 965.**

12. **Public Officers and Employees § 68 (NCI4th); Constitutional Law § 98 (NCI4th)— public officials—state constitutional due process claim—not recognized**

The trial court did not err by denying defendants' amended motion to dismiss plaintiff's claims against defendants in their individual capacities for monetary and injunctive relief for alleged due process violations of the state constitution in firing plaintiff for refusing to submit a urine sample as part of a drug investigation. A plaintiff cannot maintain a claim against government employees in their individual capacities for alleged violations of state constitutional rights.

**Am Jur 2d, Civil Rights §§ 264, 282; Public Officers and Employees §§ 358 et seq.**

**Immunity of public officials from personal liability in civil rights actions brought by public employees under 42 USCS § 1983. 63 ALR Fed. 744.**

**13. Appeal and Error § 111 (NCI4th)— denial of motion to dismiss—issue preclusion and exclusive remedy— interlocutory**

Defendants' assignments of error relating to issue preclusion and exclusive remedy, other federal and state constitutional claims, and the statement of a claim for intentional infliction of emotional distress were interlocutory where they failed to show how the trial court's order denying their motion to dismiss deprives them of a substantial right.

**Am Jur 2d, Appeal and Error §§ 105 et seq.**

Appeal by defendants from order entered 30 November 1991 by Judge Beverly T. Beal in Burke County Superior Court. Heard in the Court of Appeals 14 January 1993; reconsidered and heard without oral argument per order dated 6 January 1995.

Plaintiff was an employee of the Western Carolina Center (hereinafter Center) in Morganton, North Carolina until 16 December 1986. The Center is a division of the North Carolina Department of Human Resources, which is a subdivision of the State of North Carolina. In December 1986, plaintiff was employed by the Center as a Developmental Technician. On 11 December 1986, Rhonda Benge (hereinafter Benge), a registered nurse, discovered that a valium tablet was missing from a medicine cabinet at the Center. A valium tablet had previously been stolen from the cabinet, so after Benge and two other employees could not locate the missing tablet, Benge called security. Plaintiff alleges that the Center's Security Chief, Ralph Keaton (hereinafter Keaton), questioned each of the Developmental Technicians. After the first tablet was stolen, all of the medicine in the cabinet had been dusted with a powder to detect unwarranted use. The nurses knew about the baited cabinet and Keaton considered them part of his "investigative team." When Keaton was called on 11 December, he requested that the Technicians, including plaintiff, wash their hands to determine whether purple dye would show up on their hands. No dye appeared on plaintiff's hands. Benge then asked each technician to give a urine sample. Keaton never asked the nurses to give urine samples. Plaintiff refused, contending that it violated his Fourth Amendment right against unlawful searches and seizures. After plaintiff refused to submit a urine specimen, the Personnel Manager for the Center, Suzanne Williams (hereinafter Williams), arrived and said that if plaintiff did not give a urine sample, he could be dismissed for insubordination. Plaintiff said he would provide a sample if everyone

else with access to the medicine cabinet also had to give urine samples. Williams responded that other employees would not be required to provide urine samples; plaintiff again refused. Plaintiff was subsequently dismissed from his employment with the Center on 16 December 1986.

Pursuant to Chapter 126 of the General Statutes, plaintiff appealed his dismissal to the Office of Administrative Hearings. Administrative Law Judge (hereinafter ALJ) Genie Rogers found that it was reasonable that Keaton did not ask the nurses to give urine samples because they were part of the investigative team. The ALJ also found that plaintiff's personnel file contained several written disciplinary warnings. The ALJ then concluded that although the taking of a urine sample is a search within the meaning of the Fourth Amendment, the attempt to take a urine sample here was not an unreasonable search because Keaton had a reasonable suspicion that someone had recently stolen the tablet and the scope of the testing was reasonably related to the circumstances of the reasonable suspicion. Accordingly, the ALJ recommended on 13 July 1988 that plaintiff's dismissal be upheld. The State Personnel Commission upheld plaintiff's dismissal on 21 February 1989.

Plaintiff filed a complaint on 15 December 1989 in Burke County Superior Court against the State; the North Carolina Department of Human Resources; the Center; J. Iverson Riddle, individually and in his representative capacity as Director of Western Carolina Center; Phillip J. Kirk, Jr., individually and in his representative capacity as Secretary of the North Carolina Department of Human Resources; Earline Boyd Brown; Benge; Suzanne Williams; Vicki Cash and Keaton. Pursuant to "28 U.S.C. Section 1983," plaintiff alleged violations of his First, Fourth, and Fourteenth Amendment rights and the applicable due process provisions of the North Carolina Constitution. Plaintiff also alleged violations of his rights under "28 U.S.C. Code Section 1981" and brought a claim for intentional infliction of emotional distress. Plaintiff asked for monetary and injunctive relief.

Two and one half months later on 28 February 1990, plaintiff took a voluntary dismissal without prejudice pursuant to G.S. 1A-1, Rule 41(a). Between the filing of the complaint in December and the voluntary dismissal in February, plaintiff never served any of the defendants with a copy of the complaint or summons. Plaintiff filed a second complaint on 27 February 1991. Defendants filed a motion to dismiss on 9 May 1991 claiming that the court lacked subject matter jurisdic-

tion of the claims and that the complaint failed to state claims upon which relief could be granted. Defendants filed an amended motion to dismiss on 29 May 1991 adding *inter alia* that the complaint was barred by the statute of limitations and that the defendants were protected from suit by absolute and qualified immunity. On 30 November 1991, Judge Beverly T. Beal denied defendants' motions to dismiss. Defendants appealed and moved the trial court to stay the action pending the appeal. The trial court denied defendants' motion to stay on 3 January 1992. On 13 January 1992, defendants filed a motion for temporary stay and petition for writ of supersedeas with this Court. We granted defendants' motion for temporary stay on 15 January 1992 and defendants' petition for writ of supersedeas on 4 February 1992.

> *Attorney General Lacy H. Thornburg, by Special Deputy Attorney General John R. Corne and Assistant Attorney General Victoria L. Voight, for the State.*

> *C. Gary Triggs, P.A., for plaintiff-appellee John Hawkins.*

EAGLES, Judge.

I.

**[1]** We note initially that the denial of a motion to dismiss is ordinarily not immediately appealable. *Faulkenbury v. Retirement System,* 108 N.C. App. 357, 365, 424 S.E.2d 420, 423, *aff'd,* 335 N.C. 158, 436 S.E.2d 821 (1993). Here, defendants asserted the defenses of absolute and qualified immunity to most of plaintiff's claims. This Court has previously held that the doctrine of sovereign immunity presents a personal jurisdiction question and that the denial of a motion to dismiss on that basis is immediately appealable. *See Faulkenbury* at 357, 424 S.E.2d at 423; *Zimmer v. North Carolina Dept. Of Transp.,* 87 N.C. App. 132, 134, 360 S.E.2d 115, 116-17 (1987). Accordingly, we hold that defendants' appeal from the trial court's denial of defendants' motions to dismiss is properly before us.

We also note initially that although plaintiff alleged in his complaint that defendants violated his rights under 28 U.S.C. §§ 1981 and 1983, both parties treated the claims as pursuant to 42 U.S.C. §§ 1981 and 1983. Accordingly, we treat the claims as pursuant to 42 U.S.C. §§ 1981 and 1983.

### Standard of Review

**[2]** "When considering a Rule 12(b)(6) motion to dismiss, the trial court need only look to the face of the complaint to determine

whether it reveals an insurmountable bar to plaintiff's recovery." *Locus v. Fayetteville State University,* 102 N.C. App. 522, 527, 402 S.E.2d 862, 866 (1991) (emphasis omitted).

## II.

**[3]** Defendants first argue that the trial court erred in denying their amended motion to dismiss plaintiff's complaint because plaintiff's claims are barred by the statute of limitations. Plaintiff filed his first complaint on 15 December 1989, within the three year statute of limitations applicable to all of his claims. Plaintiff then voluntarily dismissed his first complaint on 29 February 1990. He filed the second complaint on 27 February 1991, which was within the one year "savings" provision provided by Rule 41(a)(1) of the North Carolina Rules of Civil Procedure. Defendants argue that plaintiff was not entitled to another year in which to refile his complaint because he took a voluntary dismissal of his first action in bad faith. Defendants base their argument on our Supreme Court's decision in *Estrada v. Burnham,* 316 N.C. 318, 341 S.E.2d 538 (1986). We disagree because *Estrada* is distinguishable.

In *Estrada,* the North Carolina Supreme Court stated that although "Rule 41(a)(1) does not, on its face, contain an explicit prerequisite of a good-faith filing with the intent to pursue the action, we find such a requirement implicit in the general spirit of the rules, as well as in the mandates of Rule 11(a)." *Estrada* at 323, 341 S.E.2d at 542. The Court concluded that a plaintiff cannot use the "savings" provision of Rule 41(a)(1) when the plaintiff files the first complaint solely with the "intention of dismissing it in order to avoid the lapse of the statute of limitations." *Estrada* at 325, 341 S.E.2d at 543. The Court concluded that the plaintiff in *Estrada* had filed the original complaint in bad faith and therefore was not entitled to the one year "savings" provision.

As the court in *Estrada* noted, "appellate court[s] cannot make findings of fact." *Id.* at 324, 341 S.E.2d at 543. However, in *Estrada,* the Court had before it the judicial admission of plaintiff's counsel that " '[c]learly there was an intent on our part not to prosecute [the first] action.' " *Estrada* at 325, 341 S.E.2d at 543. This admission enabled the Court to reach the conclusion that the plaintiff had a "bad" intent. Here, there is no evidence of record that plaintiff's sole intent in filing the first complaint was to dismiss it in order to gain another year in which to file a "sufficient" complaint. In *Estrada,* the plaintiff filed the first complaint at 4:28 p.m. on 18 June 1982, and

filed the notice of dismissal at 4:30 p.m., two minutes after he filed the original complaint. *Estrada* at 319, 341 S.E.2d at 539, 40. Here, plaintiff waited over two months to dismiss his original complaint. Here, too, there is no judicial admission that shows that plaintiff filed and dismissed his first complaint in bad faith. Accordingly, we hold that the "savings" provision of Rule 41(a)(1) properly applied to plaintiff's complaint and that his second complaint was not barred by the statute of limitations.

## FEDERAL CLAIMS

### III.

[4] Defendants argue that the trial court erred in denying defendants' amended motion to dismiss plaintiff's federal claims because the defendants in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1994). The United States Supreme Court held in *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71, 105 L.Ed.2d 45, 58 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." While the Court opined that state officials are "literally . . . persons," the opinion holds that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71, 105 L.Ed.2d at 58, *citing Brandon v. Holt*, 469 U.S. 464, 471, 83 L.Ed.2d 878, 884-85 (1985). "As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71, 105 L.Ed.2d at 58. Because defendants in their official capacities are not "persons" within the meaning of section 1983 for recovering money damages, we hold that the trial court erred in denying defendants' amended motion to dismiss plaintiff's federal claims against defendants in their official capacities for monetary damages.

Plaintiff also argues that defendants are "persons" here and liable because their actions establish a "governmental custom" of Constitu-

## HAWKINS v. STATE OF NORTH CAROLINA

[117 N.C. App. 615 (1995)]

tional and statutory violations. We are not persuaded. Plaintiff relies on language from cases dealing with municipal liability. Municipalities do not enjoy the same protections from liability that states enjoy. "[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Etc.*, 507 U.S. —, —, 122 L.Ed.2d 517, 523 (1993). Accordingly, plaintiff here cannot contend that defendants in their official capacities are liable for alleged Constitutional violations by arguing that defendants' actions were pursuant to a "governmental custom."

As to plaintiff's claim for injunctive relief under section 1983, defendants are "persons." *Will*, 491 U.S. at 71 n.10, 105 L.Ed.2d at 58 n.10. Accordingly, plaintiff may be able to obtain injunctive relief against defendants in their official capacities if he can state a claim under each of the alleged federal violations.

### IV.

Defendants also argue that the trial court erred in denying defendants' amended motion to dismiss plaintiff's federal claims because defendants in their individual capacities are immune from suit under the doctrine of qualified immunity. "[S]tate governmental officials [may] be sued in their individual capacities for [monetary] damages under section 1983." *Corum v. University of North Carolina*, 330 N.C. 761, 772, 413 S.E.2d 276, 283, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied, Durham v. Corum*, — U.S. —, 121 L.Ed.2d 431 (1992). Government officials sued under section 1983 may raise the defense of qualified immunity. *Id.* "To raise the defense, which does not apply to injunctive relief, the challenged conduct must not have violated a clearly established constitutional [or statutory] right of which a reasonable person would have known." *Truesdale v. Univ. Of North Carolina*, 91 N.C. App. 186, 193, 371 S.E.2d 503, 507 (1988), *review denied*, 323 N.C. 706, 377 S.E.2d 229, *cert. denied*, 493 U.S. 808, 107 L.Ed.2d 19 (1989), *overruled on other grounds by Corum*, 330 N.C. 761, 413 S.E.2d 276, *citing Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.Ed.2d 396 (1982). For clarity, we will address each of plaintiff's claims separately.

### A.   First Amendment Claim

[5] For plaintiff to maintain a free speech claim under section 1983, plaintiff must first establish that his speech was protected by show-

**HAWKINS v. STATE OF NORTH CAROLINA**

[117 N.C. App. 615 (1995)]

ing that "(i) the speech pertained to a matter of public concern and (ii) the public concern outweighed the governmental interest in efficient operations." *Lenzer v. Flaherty*, 106 N.C. App. 496, 507, 418 S.E.2d 276, 283, *review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992), *citing Connick v. Myers*, 461 U.S. 138, 75 L.Ed.2d 708 (1983). "The determination of whether the conduct is protected activity is a question of law." *Lenzer* at 507, 418 S.E.2d at 283, *citing Connick*, 461 U.S. at 148 n.7, 75 L.Ed.2d at 720 n.7. "A matter is of public concern if when fairly considered it relates 'to any matter of political, social, or other concern to the community.' " *Pressman v. University Of N.C. At Charlotte*, 78 N.C. App. 296, 300-01, 337 S.E.2d 644, 647 (1985), *review allowed*, 315 N.C. 589, 341 S.E.2d 28 (1986), *citing Connick*, 461 U.S. at 146, 75 L.Ed.2d at 719. We must look at the context, form, and content of the employee's speech to determine whether it is a matter of public concern. *Pressman* at 301, 337 S.E.2d at 647, *citing Connick*, 461 U.S. at 147-48, 75 L.Ed.2d at 720.

Here, the only allegation in plaintiff's complaint of any "speech" is plaintiff's assertion that when he was asked to give a urine sample, he said that the defendants' actions "violated his Constitutionally protected rights including his 4th, 5th and 6th Amendment[] [rights]." There is no indication from the record that defendants fired plaintiff for this "speech." The record indicates that defendants fired plaintiff because he refused to provide a urine sample. One's simply saying that giving a urine sample violates one's own Constitutional rights is not a matter of public concern. *Cf. Lenzer* at 508, 418 S.E.2d at 283 (holding that when a person reports cases of possible patient abuse, that speech is a matter of public concern). Accordingly, plaintiff does not satisfy the first requirement to show that his speech was protected and we need not address the second requirement.

Because we hold that plaintiff's "speech" here was not protected, we also find that defendants are insulated from liability by the doctrine of qualified immunity. Plaintiff failed to show that there was a "clearly established" right which defendants allegedly violated. Accordingly, we do not address the second prong of the qualified immunity doctrine as it relates to plaintiff's claim of a free speech violation. The trial court erred in denying defendants' motion to dismiss as to plaintiff's free speech claim.

## B. Fourteenth Amendment Claim

[6] In his complaint, plaintiff alleges that his termination violated his due process rights guaranteed by the Fourteenth Amendment.

**HAWKINS v. STATE OF NORTH CAROLINA**

[117 N.C. App. 615 (1995)]

Defendants argue that plaintiff failed in his complaint and memorandum in opposition to defendants' motion to dismiss to show how his due process rights were violated. We agree. Under the doctrine of qualified immunity, the plaintiff bears the burden of establishing that the right violated was clearly established. *Clark v. Link*, 855 F.2d 156, 160 (4th Cir. 1988). In its recommended decision, the ALJ found that plaintiff and defendants had stipulated that defendants "fully complied with the procedural requirements of Chapter 126 . . . and Section 9 of the State Personnel Manual as they relate to the discharge of a full-time State employee." Chapter 126 sets out the procedures which a discharged employee must follow when contesting termination. This Court has previously stated that these procedures fully protect an employee's due process rights. *Sherrod v. N.C. Dept. Of Human Resources*, 105 N.C. App. 526, 531, 414 S.E.2d 50, 53 (1992). Accordingly, defendants did not violate any clearly established due process rights in terminating plaintiff and defendants are entitled to qualified immunity as to plaintiff's Fourteenth Amendment due process claim.

## C. Fourth Amendment Claim

**[7]** Plaintiff also alleged in his complaint that defendants violated his rights by requiring him to provide a urine sample which, he argues, constitutes a search under the Fourth Amendment. However, the United States Supreme Court did not declare that a urine test is a search under the Fourth Amendment until 1989 in *Skinner v. Railway Labor Exec. Assn.*, 489 U.S. 602, 103 L.Ed.2d 639 (1989). Defendants asked plaintiff to give a urine sample in 1986. "Only violations of those federal rights 'clearly recognized in existing case law' will support an award in damages under 42 U.S.C. § 1983." *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991), *cert. denied*, —— U.S. ——, 116 L.Ed.2d 777 (1992), *citing Danenberger v. Johnson*, 821 F.2d 361, 365 (7th Cir. 1987). When defendants asked plaintiff to provide a urine sample, there was no clearly established law that restricted the taking of urine specimens. "[A]lthough public officials may be 'charged with knowledge of constitutional developments, [they] are not required to predict the future course of constitutional law.'" *Swanson*, 937 F.2d at 968, *citing Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989), *cert. denied*, 493 U.S. 1057, 107 L.Ed.2d 951 (1990). Accordingly, we hold that defendants did not violate any "clearly established" right in 1986 when they asked plaintiff to provide a urine sample.

## D. 42 U.S.C. Section 1981 Claim

**[8]** Finally, plaintiff alleged in his complaint that he was "systematically discriminated against" because of his race in violation of 42 U.S.C. § 1981. However, at the time of defendants' alleged violations, section 1981 provided limited protections because it only forbade discrimination in the making and enforcement of contracts. *Williams v. First Union Nat. Bank Of N.C.*, 920 F.2d 232, 234 (4th Cir. 1990), *cert. denied*, 500 U.S. 953, 114 L.Ed.2d 712 (1991). Section 1981 did not govern a discriminatory discharge action. *Id.* Section 1981 also did not cover "postformation conduct by the employer relating to the terms and conditions of continuing employment." *Patterson v. McLean Credit Union*, 491 U.S. 164, 179, 105 L.Ed.2d 132, 152 (1989). Like the plaintiff in *Patterson*, plaintiff here alleged that he was discriminated against during his employment. Although the 1991 Civil Rights Act broadened the scope of section 1981, the Fourth Circuit has declined to apply the Act retroactively. *Percell v. International Business Machines, Inc.*, 785 F. Supp. 1229, 1231 (E.D.N.C. 1992), *aff'd*, 23 F.3d 402 (4th Cir. 1994). (We note that *Williams* and *Patterson* were superseded by the Act insofar as they define the present scope of section 1981.) Therefore, we hold that plaintiff here has not stated a claim pursuant to section 1981 because at the time of the alleged statutory violations, section 1981 did not cover the defendants' alleged actions. Accordingly, we need not address the immunity issue.

As to plaintiff's claim for injunctive relief, we hold that the trial court should have granted defendants' motion to dismiss plaintiff's First Amendment and section 1981 claims because, as we concluded above, plaintiff failed to state a claim. As to plaintiff's Fourth and Fourteenth Amendment claims, we hold that the trial court did not err in denying defendants' motion to dismiss.

### STATE CLAIMS

### V.

**[9]** Defendants argue that the trial court erred in denying defendants' amended motion to dismiss plaintiff's state claims because defendants in their official capacities are absolutely immune from suit. The doctrine of sovereign immunity protects the State from suit unless it consents to be sued. Because a suit against public officials and public employees in their official capacities is considered a suit against the State, sovereign immunity also protects these individuals from

suit. *Minneman v. Martin*, 114 N.C. App. 616, 618, 442 S.E.2d 564, 566 (1994).

Here, plaintiff argues that the State waived its immunity from suit by entering into a contract of employment with plaintiff. Plaintiff is correct that when the State "enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 424 (1976). However, neither of plaintiff's two state claims here are contract claims. One is a tort claim and the other is a state constitutional law claim. Accordingly, plaintiff's argument is without merit. The State has not waived its immunity with respect to plaintiff's tort claim and may assert absolute immunity as to that claim.

[10] As to the state constitutional law claim, defendants also argue that plaintiff cannot maintain this action against the State, its agencies, or employees in their official capacity because there exists an adequate state remedy. Defendants are correct that a direct cause of action under the State Constitution is permitted only "in the absence of an adequate state remedy." *Corum*, 330 N.C. at 782, 413 S.E.2d at 289. Here, there is an adequate state remedy for plaintiff's alleged due process injury. Article 8 of Chapter 126 and Articles 3 and 4 of Chapter 150B of the General Statutes provide for an administrative review of plaintiff's termination and the right of judicial review of the agency's decision by the superior court. Accordingly, the trial court erred in denying defendants' amended motion to dismiss plaintiff's state constitutional law claim.

## VI.

[11] Defendants also argue that the trial court erred in denying their amended motion to dismiss plaintiff's state claims because defendants in their individual capacities are immune from suit under the doctrine of qualified immunity.

### A.   Tort Claim

"[A] public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. . . . [A]n official may not be held liable unless [the plaintiff] allege[s] and prove[s] that [the official's] act, or failure to act, was corrupt or malicious . . . or that he acted outside of and beyond the scope of his duties."

*Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976), *quoting Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952). Unlike a public official, a public employee is " 'personally liable for his negligence in the performance of his duties proximately causing injury to another.' " *Harwood v. Johnson*, 92 N.C. App. 306, 309-10, 374 S.E.2d 401, 404 (1988), *review allowed*, 324 N.C. 247, 377 S.E.2d 754 (1989), *aff'd in part, rev'd in part on other grounds*, 326 N.C. 231, 388 S.E.2d 439 (1990), *quoting Givens v. Sellars*, 273 N.C. 44, 49, 159 S.E.2d 530, 534-35 (1968). "Malice" is defined as "[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." *Blacks Law Dictionary* 1109 (6th ed. 1990). Because malice encompasses intent, we conclude that if a party alleges an intentional tort claim, the doctrine of qualified immunity does not immunize public officials or public employees from suit in their individual capacities. Here, plaintiff alleged that defendants' actions constituted intentional infliction of emotional distress. Accordingly, the trial court did not err in denying defendants' motion to dismiss plaintiff's tort claim.

## B.   State Constitutional Law Claim

**[12]** As to plaintiff's state constitution due process claim, defendants argue that North Carolina does not recognize a state claim against state officials in their individual capacities for alleged violations of state constitutional rights. We agree. Our Supreme Court has held that a plaintiff cannot maintain a claim against government employees in their individual capacities for alleged violations of state constitutional free speech rights. *Corum v. University Of North Carolina*, 330 N.C. 761, 789, 413 S.E.2d 276, 293, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied, Durham v. Corum*, —— U.S. ——, 121 L.Ed.2d 431 (1992). Based on the Court's discussion in *Corum*, we hold that the Court's holding applies equally to alleged violations of other state constitutional rights. *See Lenzer v. Flaherty*, 106 N.C. App. 496, 514, 418 S.E.2d 276, 287 (1992) (agreeing that *Corum* holds that "State constitutional claims are not cognizable against State actors in their individual capacity"). Accordingly, the trial court erred in denying defendants' amended motion to dismiss plaintiff's claims against defendants in their individual capacities for monetary and injunctive relief for alleged violations of the state constitution.

### VII.

**[13]** Defendants also argue that the trial court erred in denying their motion to dismiss plaintiff's claims because they are barred by the doctrines of issue preclusion and exclusive remedy. As we discussed in I., *supra*, the denial of a motion to dismiss is ordinarily not immediately appealable. *Faulkenbury v. Retirement System*, 108 N.C. App. 357, 365, 424 S.E.2d 420, 423 (1993). Although interlocutory in nature, an appellate court may address an interlocutory order when it " 'deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits.' " *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994), *quoting Southern Uniform Rentals, Inc. v. Iowa Nat'l Mut. Ins. Co.*, 90 N.C. App. 738, 740, 370 S.E.2d 76, 78 (1988). The appellant has the burden to show how it will be deprived of a substantial right absent immediate appeal. *Jeffreys* at 379, 444 S.E.2d at 253. As to defendants' seventh and eighth assignments of error which deal with issue preclusion and the doctrine of exclusive remedy, defendants have failed to show how the trial court's order deprives them of a substantial right. "It is not the duty of this Court to construct arguments for or find support for [defendants'] right to appeal from an interlocutory order." *Id.* at 380, 444 S.E.2d at 254. Accordingly, we decline to address these two assignments of error.

### VIII.

In defendants' ninth through twelfth assignments of error, defendants claim that the trial court erred in denying defendants' motion to dismiss because plaintiff's complaint fails to state a claim under the First, Fourth, and Fourteenth Amendments to the United States Constitution, under the North Carolina Constitution, or under 42 U.S.C. § 1981. We have already concluded that plaintiff fails to state a claim pursuant to 42 U.S.C. § 1981 and pursuant to the First Amendment of the United States Constitution. As to defendants' contentions concerning plaintiff's other federal and state constitutional claims, we once again note that the order from which defendants appeal is interlocutory. On this record we hold that defendants will not be deprived of any substantial right by waiting until trial to present their defenses to plaintiff's remaining constitutional law claims.

### IX.

Defendants also argue that plaintiff's complaint fails to state a claim for intentional infliction of emotional distress and that the trial

court erred in signing the order because "it is contrary to law." Because the trial court's order is interlocutory and there has been no showing how defendants will be deprived of a substantial right by waiting for a final determination of plaintiff's emotional distress claim, we do not address these assignments of error.

## X.

In summary, the trial court did not err: (1) in denying defendants' amended motion to dismiss plaintiff's Fourth and Fourteenth Amendment claims for injunctive relief against defendants in their official and individual capacities, and (2) in denying defendants' amended motion to dismiss plaintiff's state tort claim as to all defendants in their individual capacities.

The trial court erred in failing to dismiss: (1) plaintiff's First Amendment and section 1981 claims for injunctive relief against defendants in their official and individual capacities, (2) plaintiff's federal claims for monetary damages against defendants in their official capacities and in their individual capacities, (3) plaintiff's state tort and constitutional claims against defendants in their official capacities, and (4) plaintiff's state constitution claim against all defendants in their individual capacities. The remaining issues on appeal are interlocutory and premature. This case is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Chief Judge ARNOLD and Judge WYNN concur.