DAVIS, Judge.
 

 *637
 
 This case presents the issue of whether a nurse at a county jail has stated a valid First Amendment claim by alleging that she was fired because she voiced objections within the workplace to performing a medical procedure on a patient. Plaintiff Elizabeth Holland appeals from the trial court's order dismissing her free speech claim pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Because we conclude that Holland's speech did not pertain to a matter of public concern so as to invoke First Amendment protections, we affirm.
 

 Factual and Procedural Background
 

 We have summarized below the allegations in Holland's complaint, which we take as true in reviewing the trial court's Rule 12(b)(6) order.
 
 See
 

 Feltman v. City of Wilson
 
 ,
 
 238 N.C. App. 246
 
 , 247,
 
 767 S.E.2d 615
 
 , 617 (2014).
 

 In 2006, Holland began working as a nurse in the Wake County Detention Center. At all relevant times, she was supervised by Nurse Tonya Minggia and Dr. Obi Umesi.
 

 During the week of 6 May 2013, Holland was asked by a Detention Center employee to administer an antibiotic-vancomycin -to a patient through an IV in order to treat the patient's infection. This drug was required to be administered twice daily for a period of six weeks. Based upon her medical experience, Holland believed that vancomycin could not be safely administered through an IV and instead should be delivered with the aid of a pump device. Holland felt that administering the drug through an IV could put the patient's life at risk, potentially expose her to a claim of malpractice, and subject her to the loss of her nursing license.
 

 Holland expressed to Minggia her belief that the Detention Center lacked the proper equipment to safely administer the medicine. In response, Minggia informed Holland that the appropriate equipment to administer the drug would be procured.
 

 As of Friday, 10 May 2013, the pump had not been obtained. Holland reiterated her belief to Minggia that she could not safely administer the drug through an IV, but Minggia nevertheless instructed her to do so. Holland objected that following Minggia's directive would "jeopardize her career and the life of her patient." She also informed Minggia that because of the high patient-to-nurse ratio at the Detention Center, "administering the medication as requested could endanger the health
 
 *638
 
 and safety of the other patients that she was to monitor because she would have to spend the majority of her time administering the medication and could not monitor the other patients to which she was assigned."
 
 *209
 
 Holland contacted the physician's assistant who oversaw the Detention Center's medical facility and relayed her concerns about administering vancomycin through an IV. The physician's assistant told Holland that she had communicated with a nurse outside of the facility who agreed with Holland's position regarding the proper administration of the drug. After Holland's continued refusal to administer vancomycin to the patient through an IV, another nurse at the Detention Center agreed to do so.
 

 Holland was subsequently notified by the on-duty nurse supervisor that she was being removed from her normal assignment in the observation unit of the Detention Center and was instead to report the following Monday for an 11:00 a.m. to 7:00 p.m. shift in the intake unit. Holland objected to this transfer based upon her belief that it was in response to her refusal to administer the vancomycin in an unsafe manner. After receiving an email from Minggia confirming the new assignment, Holland sent an email on 11 May to Minggia, Holland's workers' compensation case manager, and the human resources department stating that she would not report to work in the new position until a medical opinion was provided by her workers' compensation healthcare provider that the new position was consistent with work restrictions previously imposed for Holland after she sustained a work-related injury.
 

 By the end of Sunday, 12 May, Holland had not received any response to her email. She did not report to work the following day but made multiple attempts to contact her case manager and the human resources department of the Sheriff's Office.
 
 [1]
 
 She eventually reached her case manager, who stated that Holland's 11 May email had been forwarded to the workers' compensation administrator. The case manager agreed with Holland that she should not accept the intake assignment until a medical review was completed.
 

 During a telephone call that afternoon, Minggia informed Holland that she should have reported to work for her new position in the intake unit at 11:00 that morning as directed. When Minggia asked Holland whether she would report to work the next day at 11:00 a.m., Holland responded that she would come to work after a 10:00 a.m. workers' compensation-related
 
 *639
 
 appointment but that she did not know when the appointment would end or whether her restrictions "would preclude her from performing certain duties under the new assignment." At that point, Minggia told Holland she was "no longer an employee of the Sheriff's [Office]" and was being "terminated because she did not show up for work [that morning]."
 

 After her appointment the following day, Holland informed the human resources department that she would, in fact, report to work in the new position, but she was told to stay home and await further communications from the Sheriff's Office. Holland received a letter by hand-delivery later that day stating that her employment was being terminated effective immediately.
 

 On 21 December 2015, Holland filed the present action in Wake County Superior Court against Sheriff Donnie Harrison, in his official capacity; Dr. Umesi, in his individual capacity; Minggia, in her individual capacity; and the Sheriff's Office's insurance carrier, the Ohio Casualty Insurance Company (collectively "Defendants"). In her complaint, Holland asserted (1) state law claims for wrongful discharge in violation of public policy, tortious interference with contract, and violation of her right to due process under the North Carolina Constitution; and (2) federal claims pursuant to
 
 42 U.S.C. § 1983
 
 for violation of her free speech and due process rights under the United States Constitution. In her complaint, Holland alleged that Minggia and Dr. Umesi had intentionally misled the Sheriff regarding the circumstances surrounding her failure to report to work on 13 May 2013 in order to induce him to dismiss Holland. She asserted that, in actuality, the reasons for their recommendation that Holland be dismissed were her objection to administering the vancomycin as well as prior disagreements between her and them about patient care.
 

 On 3 March 2016, Defendants filed a partial motion to dismiss pursuant to
 
 *210
 
 Rule 12(b)(6) in which they asserted that Holland had failed to state any valid claims upon which relief could be granted except for her state law wrongful discharge claim. Following a hearing before the Honorable Paul C. Ridgeway on 13 May 2016, the trial court issued an order granting in part and denying in part Defendants' motion. The court dismissed Holland's state and federal constitutional claims but declined to dismiss her claim for tortious interference with contract.
 
 [2]
 
 Holland filed a timely notice of appeal as to the portion of the trial court's order
 
 *640
 
 dismissing her
 
 42 U.S.C. § 1983
 
 claim for violation of her free speech rights under the First Amendment.
 
 [3]
 

 Analysis
 

 I. Appellate Jurisdiction
 

 Defendants seek the dismissal of Holland's appeal as interlocutory. Accordingly, we must determine whether we have appellate jurisdiction to hear this appeal.
 
 See
 

 Duval v. OM Hospitality, LLC
 
 ,
 
 186 N.C. App. 390
 
 , 392,
 
 651 S.E.2d 261
 
 , 263 (2007) ("[W]hether an appeal is interlocutory presents a jurisdictional issue[.]" (citation and quotation marks omitted)).
 

 "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court."
 

 Id.
 

 (citation omitted). Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather "directs some further proceeding preliminary to the final decree."
 
 Heavner v. Heavner
 
 ,
 
 73 N.C. App. 331
 
 , 332,
 
 326 S.E.2d 78
 
 , 80,
 
 disc. review denied
 
 ,
 
 313 N.C. 601
 
 ,
 
 330 S.E.2d 610
 
 (1985). Therefore, because the trial court's order decided some, but not all, of Holland's claims, this appeal is interlocutory.
 

 "Generally, there is no right of immediate appeal from interlocutory orders and judgments."
 
 Paradigm Consultants, Ltd. v. Builders Mut. Ins. Co.
 
 ,
 
 228 N.C. App. 314
 
 , 317,
 
 745 S.E.2d 69
 
 , 72 (2013) (citation and quotation marks omitted). The prohibition against interlocutory appeals "prevents fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts."
 
 Russell v. State Farm Ins. Co.
 
 ,
 
 136 N.C. App. 798
 
 , 800,
 
 526 S.E.2d 494
 
 , 496 (2000) (citation and brackets omitted).
 

 However, there are two avenues by which a party may immediately appeal an interlocutory order or judgment. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. Second, an appeal is permitted under
 
 N.C. Gen. Stat. §§ 1-277
 
 (a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.
 

 *641
 

 N.C. Dep't of Transp. v. Page
 
 ,
 
 119 N.C. App. 730
 
 , 734,
 
 460 S.E.2d 332
 
 , 334 (1995) (internal citations omitted).
 

 The trial court's 13 May 2016 order does not contain a certification under Rule 54(b). Therefore, Holland's appeal is proper only if she can demonstrate a substantial right that would be lost absent an immediate appeal.
 
 See
 

 Embler v. Embler
 
 ,
 
 143 N.C. App. 162
 
 , 166,
 
 545 S.E.2d 259
 
 , 262 (2001) ("The burden is on the appellant to establish that a substantial right will be affected unless he is allowed immediate appeal from an interlocutory order." (citation omitted)).
 

 Our caselaw makes clear that a substantial right is affected "where a possibility of inconsistent verdicts exists if the case proceeds to trial."
 
 Heritage Operating, L.P. v. N.C. Propane Exch., LLC
 
 ,
 
 219 N.C. App. 623
 
 , 627,
 
 727 S.E.2d 311
 
 , 314 (2012) (citation and quotation marks omitted).
 

 To demonstrate that a second trial will affect a substantial right, [the appellant] must show not only that one claim has been finally determined and others remain which have not yet been determined, but that (1) the same factual issues would be
 
 *211
 
 present in both trials
 
 and
 
 (2) the possibility of inconsistent verdicts on those issues exists.
 

 Id
 
 . at 627-28,
 
 727 S.E.2d at 314-15
 
 (citation, quotation marks, and brackets omitted);
 
 see also
 

 Carcano v. JBSS, LLC
 
 ,
 
 200 N.C. App. 162
 
 , 168,
 
 684 S.E.2d 41
 
 , 47 (2009) ("[S]o long as a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right
 
 if
 
 there are overlapping factual issues between the claim determined and any claims which have not yet been determined." (citation and quotation marks omitted)). "Issues are the 'same' if facts relevant to their resolution overlap in such a way as to create a risk that separate litigation of those issues might result in inconsistent verdicts."
 
 Hamilton v. Mortg. Info. Servs., Inc
 
 .,
 
 212 N.C. App. 73
 
 , 79,
 
 711 S.E.2d 185
 
 , 190 (2011).
 

 In the present case, we are satisfied that a sufficient overlap exists between Holland's surviving claim for wrongful discharge and her First Amendment claim that was dismissed by the trial court such that there exists a possibility of inconsistent verdicts absent immediate appeal of the trial court's order. Specifically, Holland's complaint alleges that she was discharged because she protested to her supervisors that administering vancomycin through an IV would be dangerous to her patient whereas Defendants assert that she was fired for not reporting to work on 13 May 2013. It is clear that the factual issue regarding the cause of Holland's dismissal would arise in both a trial on the wrongful discharge
 
 *642
 
 claim and a trial on the First Amendment claim given that both claims hinge upon the actual reason for the termination of her employment.
 

 Our consideration of this interlocutory appeal is consistent with this Court's prior caselaw. In
 
 Bowling v. Margaret R. Pardee Mem'l Hosp.
 
 ,
 
 179 N.C. App. 815
 
 ,
 
 635 S.E.2d 624
 
 (2006),
 
 appeal dismissed and disc. review denied
 
 ,
 
 361 N.C. 425
 
 ,
 
 648 S.E.2d 206
 
 (2007), the plaintiff asserted claims for violation of the North Carolina Disabilities Act and for wrongful discharge in violation of public policy. At the heart of both claims was the issue of whether the defendant terminated the plaintiff's employment because of poor performance or because of a health issue. At the motion to dismiss stage, the trial court dismissed the North Carolina Disabilities Act claim but allowed the wrongful discharge claim to go forward, prompting the plaintiff to file an interlocutory appeal.
 
 Id.
 
 at 818,
 
 635 S.E.2d at 627
 
 . We concluded that the plaintiff's "North Carolina Disabilities Act claim and his claim for wrongful discharge in violation of public policy ... unquestionably involve the same facts and circumstances, namely, his termination by [the defendant] Hospital. If we refuse his appeal, two trials and possibly inconsistent verdicts could result."
 

 Id.
 

 ;
 
 see also
 

 Taylor v. Hospice of Henderson Cnty., Inc.
 
 ,
 
 194 N.C. App. 179
 
 , 182,
 
 668 S.E.2d 923
 
 , 925 (2008) (applying
 
 Bowling
 
 in similar circumstances).
 

 Thus, we are satisfied that we possess jurisdiction to consider the merits of Holland's appeal.
 
 See
 

 Carcano
 
 ,
 
 200 N.C. App. at 168
 
 ,
 
 684 S.E.2d at 47
 
 ("Because there are overlapping factual issues, inconsistent verdicts could result. We hold, thus, that ... plaintiffs' appeal is properly before us.").
 

 II. Dismissal of First Amendment Claim
 

 As noted above, Holland's sole argument on appeal is that the trial court erred in granting Defendants' motion to dismiss her free speech claim under
 
 42 U.S.C. § 1983
 
 .
 

 The standard of review of an order granting a Rule 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On appeal, we review the pleadings
 
 de novo
 
 to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
 

 Feltman
 
 ,
 
 238 N.C. App. at 251
 
 ,
 
 767 S.E.2d at 619
 
 (citation omitted).
 

 *643
 
 "Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the
 
 *212
 
 complaint discloses some fact that necessarily defeats the plaintiff's claim."
 
 Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A
 
 .,
 
 231 N.C. App. 70
 
 , 74,
 
 752 S.E.2d 661
 
 , 663 (2013) (citation omitted).
 

 Section 1983 provides a private right of action against anyone who, acting under color of state law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution...."
 
 42 U.S.C. § 1983
 
 . In order to state a § 1983 claim alleging a wrongful discharge or demotion in violation of the First Amendment, a public employee must allege facts showing that (1) "the speech complained of qualified as protected speech or activity"; and (2) "such protected speech or activity was the 'motivating' or 'but for' cause for his discharge or demotion."
 
 McLaughlin v. Bailey
 
 ,
 
 240 N.C. App. 159
 
 , 172,
 
 771 S.E.2d 570
 
 , 580 (2015) (citation and quotation marks omitted),
 
 aff'd per curiam
 
 ,
 
 368 N.C. 618
 
 ,
 
 781 S.E.2d 23
 
 (2016).
 

 In order to establish that the employee engaged in protected speech, she must show that "(i) the speech pertained to a matter of public concern and (ii) the public concern outweighed the governmental interest in efficient operations."
 
 Hawkins v. State
 
 ,
 
 117 N.C. App. 615
 
 , 625-26,
 
 453 S.E.2d 233
 
 , 239 (1995) (citation and quotation marks omitted). The determination of whether speech is protected under the First Amendment is a question of law.
 
 Id.
 
 at 626,
 
 453 S.E.2d at 239
 
 .
 

 Defendants contend that even taking Holland's factual allegations as true, she has failed to establish that her speech related to a matter of public concern. A "matter of public concern" is one that "relates to any matter of political, social, or other concern to the community."
 

 Id.
 

 (citation and quotation marks omitted). "The reviewing court must examine the employee's speech in light of the content, form, and context of a given statement, as revealed by the whole record[,] to determine whether it is a matter of public concern."
 
 Howell v. Town of Carolina Beach
 
 ,
 
 106 N.C. App. 410
 
 , 419,
 
 417 S.E.2d 277
 
 , 283 (1992) (citation, quotation marks, and alterations omitted).
 

 The test is whether the employee was speaking as a citizen about matters of public concern, or as an employee on matters of personal interest. Moreover, complaints about conditions of employment or internal office affairs generally concern an employee's self-interest rather than
 
 *644
 
 public concern, even though a governmental office may be involved[.]
 

 Evans v. Cowan
 
 ,
 
 132 N.C. App. 1
 
 , 9,
 
 510 S.E.2d 170
 
 , 175-76 (1999) (internal citation omitted).
 

 As a general proposition, courts are more likely to conclude that speech involves a matter of public concern when the speech is directed at an audience wider than one's immediate supervisors.
 
 See, e.g.
 
 ,
 
 Durham v. Jones
 
 ,
 
 737 F.3d 291
 
 , 300 (4th Cir. 2013) (noting that plaintiff "did not keep the written materials internal, but instead sent them to a broad audience" including public officials and media outlets);
 
 Clairmont v. Sound Mental Health
 
 ,
 
 632 F.3d 1091
 
 , 1104 (9th Cir. 2011) ("Although not dispositive, a small or limited audience weighs against a claim of protected speech." (citation, quotation marks, and brackets omitted)).
 

 Evans
 
 is instructive on this point. In
 
 Evans
 
 , the plaintiff was hired by the University of North Carolina at Chapel Hill's Student Health Services ("SHS") to help run the AfterHours Program ("AfterHours"), which provided health services to students outside of normal business hours.
 
 Evans
 
 ,
 
 132 N.C. App. at 2
 
 ,
 
 510 S.E.2d at 171-72
 
 . During several internal task force meetings related to the operation of AfterHours, the plaintiff made numerous suggestions for improvements to the program, including the cost-saving measure of hiring full-time nurse practitioners (rather than contracting with outside physicians) and the development of a comprehensive alcohol policy that would address students' alcohol-related health problems.
 
 Id.
 
 at 2-3,
 
 510 S.E.2d at 172
 
 . She also expressed concern over the fact that a particular SHS volunteer consultant "was a non-employee acting in a medical capacity at a state institution."
 
 Id.
 
 at 3,
 
 510 S.E.2d at 172
 
 . In addition, she voiced her disapproval of SHS's plan to allow physicians who were part of a fellowship program to supervise nurse
 
 *213
 
 practitioners, a policy she felt violated a state regulation governing the supervision of nurse practitioners.
 

 Id.
 

 She was subsequently discharged from her employment with SHS.
 
 Id.
 
 at 4,
 
 510 S.E.2d at 173
 
 .
 

 The plaintiff filed a lawsuit in which she alleged that SHS had retaliated against her in violation of her free speech rights, and the claim was dismissed by the trial court.
 
 Id.
 
 at 5,
 
 510 S.E.2d at 173
 
 . On appeal, we affirmed the trial court's dismissal of the claim because the plaintiff's statements "related to internal policies and office administration of SHS and did not rise to the level of public concern."
 
 Id.
 
 at 10,
 
 510 S.E.2d at 176
 
 . Notably, we observed that "no evidence in the record indicates plaintiff ever voiced her concerns publicly outside the employment setting, which would tend to indicate a public concern."
 

 Id.
 

 *645
 

 Evans
 
 underscores the relevance to this inquiry of the context and form of the speech at issue. The
 
 content
 
 of the communications made by the plaintiff in
 
 Evans
 
 arguably touched upon matters of public concern-
 
 i.e.
 
 , the cost-effectiveness of a healthcare program at a publicly-funded university, the program's ability to help students deal with alcohol problems, and the program's compliance with regulations concerning the oversight of nurses. However, the internal nature of her complaints militated against a conclusion that they involved matters of public concern such that free speech protections would attach.
 

 Conversely,
 
 Lenzer v. Flaherty
 
 ,
 
 106 N.C. App. 496
 
 ,
 
 418 S.E.2d 276
 
 ,
 
 disc. review denied
 
 ,
 
 332 N.C. 345
 
 ,
 
 421 S.E.2d 348
 
 (1992), provides an example of a case in which we held that a public employee's speech dealt with a matter of public concern where the employee raised the issue of wrongdoing in her workplace to parties outside of her direct employment setting. In that case, the plaintiff-a physician's assistant employed by the State's Alcohol Rehabilitation Center ("ARC")-complained to the State Bureau of Investigation ("SBI") and the State Department of Human Resources ("DHR") that ARC was not adequately investigating instances of suspected sexual abuse of patients by ARC personnel.
 
 Id.
 
 at 501,
 
 418 S.E.2d at 279
 
 . After the plaintiff was dismissed from her employment, she filed a lawsuit alleging that her free speech rights had been violated because she was discharged in retaliation for having reported ARC's mishandling of suspected patient abuse to the SBI and the DHR. The trial court granted the defendants' motion for summary judgment and dismissed this claim.
 
 Id.
 
 at 505,
 
 418 S.E.2d at 281
 
 .
 

 In reversing the trial court's dismissal of the plaintiff's free speech claim, we rejected the notion that the "plaintiff was speaking out for personal reasons unrelated to a matter of public concern when she questioned the vigor of investigations into possible mistreatment of patients at the ARC."
 
 Id.
 
 at 507,
 
 418 S.E.2d at 283
 
 . We noted that "the ARC administration, knowing of an incident of sexual misconduct ..., sought to keep that information from going beyond the ARC."
 

 Id.
 

 Thus, the fact that the plaintiff raised concerns outside of ARC about its handling of instances of sexual abuse (particularly in the face of ARC's attempt to keep such information from being made public) was relevant to our conclusion that her speech addressed a matter of public concern.
 
 Id.
 
 at 508,
 
 418 S.E.2d at 283
 
 .
 

 Warren v. New Hanover County Board of Education
 
 ,
 
 104 N.C. App. 522
 
 ,
 
 410 S.E.2d 232
 
 (1991), provides another example of the significance of the context in which the speech at issue is conveyed to
 
 *646
 
 others. In
 
 Warren
 
 , the plaintiff was a public school teacher who also served as the president of the New Hanover County affiliate of the North Carolina Association of Educators ("NCAE"). The plaintiff had historically received "very positive evaluations of his teaching performance" and had twice been selected as "Teacher of the Year."
 
 Id.
 
 at 524,
 
 410 S.E.2d at 233
 
 . However, after publicizing the results of an NCAE survey that showed New Hanover County's public school teachers to be dissatisfied with a merit pay pilot program, the plaintiff received unfavorable performance evaluations and was denied a promotion. He sued the New Hanover County Board of Education, alleging that it had denied him the promotion in retaliation for his protected speech.
 

 Id.
 

 In concluding that the plaintiff's speech involved a matter of public concern, we highlighted the fact that the plaintiff had "addressed the Board about the survey results
 
 *214
 
 at a public school board meeting."
 
 Id.
 
 at 526,
 
 410 S.E.2d at 234
 
 . Thus, the plaintiff's act of publicly communicating the results of the teacher pay survey to the body tasked with overseeing school policy supported our determination that his speech pertained to a matter of public concern.
 

 Guided by the cases discussed above, we conclude that in the present case the trial court did not err in dismissing Holland's § 1983 claim. Holland voiced within the workplace a disagreement with her supervisors regarding the appropriate method for administering a particular medicine to a specific patient. She has not pled facts alleging a systemic problem with patient care at the Detention Center or asserting that she "ever voiced her concerns publicly outside the employment setting, which would tend to indicate a public concern."
 
 Evans
 
 ,
 
 132 N.C. App. at 10
 
 ,
 
 510 S.E.2d at 176
 
 . Rather, the speech at issue here involved an internal dispute as to the proper way for Holland to perform her job duties that were largely focused on the treatment of a single patient.
 

 Nothing in our holding, however, should be construed as diminishing the importance of patient safety in public medical facilities. In appropriate circumstances, a public employee's speech about the mistreatment of such patients could certainly rise to the level of public concern so as to invoke the First Amendment. However, even taking Holland's allegations in the light most favorable to her, we are unable to conclude that her speech under the specific circumstances alleged in her complaint involved a matter of public concern.
 

 Accordingly, Holland has failed to state a free speech claim under
 
 42 U.S.C. § 1983
 
 . Therefore, the trial court's dismissal of this claim was proper.
 

 *647
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's 13 May 2016 order.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge MURPHY concur.
 

 [1]
 

 The Detention Center is operated by the Wake County Sheriff's Office.
 

 [2]
 

 Because Holland's wrongful discharge claim was not within the scope of Defendants' motion to dismiss, that claim also remains pending.
 

 [3]
 

 Holland has not appealed the remaining aspects of the trial court's order.