IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-325

Filed 17 December 2025

Rutherford County, No. 24CVS000130-800

STEPHANIE WELBOURNE, in her individual capacity,
and STEPHANIE WELBOURNE, in her capacity
as the Administratrix of the ESTATE OF
ZACHARY THOMAS WELBOURNE, Plaintiffs,
                    v.

KNOX BENNETT BARBEE and
GEROMY TAD BARBEE, Defendants.

Appeal by plaintiffs from orders entered 3 January 2025 and 22 August 2024 by Judge James Thomas Davis in Rutherford County Superior Court. Heard in the Court of Appeals 28 October 2025.

*White & Stradley, PLLC, by J. David Stradley and Ann C. Ochsner, and Farmer & Morris Law, PLLC, by Joshua Farmer, for plaintiffs-appellants.*

*Robinson Gooding Law, by William C. Robinson and Dorothy M. Gooding, for defendants-appellees.*

FLOOD, Judge.

Plaintiffs, Stephanie Welbourne, in her individual capacity and in the capacity as the Administratrix of the Estate of Zachary Thomas Welbourne, appeal from the trial court's order enforcing a settlement agreement between Plaintiffs and Defendants Knox Barbee and his father, Geromy Barbee. On appeal, Plaintiffs argue the trial court erred, first, by granting Defendants' motion to enforce the settlement agreement and, second, by denying Plaintiffs' motion to amend the trial court's

judgment pursuant to Rules 59(e) and 60(b). Upon careful review, we conclude first, we do not have jurisdiction to hear Plaintiffs' first argument, and second, we affirm the trial court's denial of Plaintiffs' motion to amend.

## I. **Factual and Procedural Background**

On 20 July 2023, Defendant Knox was driving his father's vehicle at a speed of around 100 miles per hour down a two-lane road when he crossed the solid double yellow lines and collied head-on with a vehicle carrying Plaintiff Stephanie Welbourne and her husband, Zachary Welbourne. Mr. Welbourne died as result of the crash, and Ms. Welbourne suffered serious injuries. Mr. Welbourne and Ms. Welbourne also have a minor son who was not involved in the crash and is now an heir of Mr. Welbourne's estate. Additionally, Defendant Knox had two other individuals in his father's vehicle, Jonathan and Jaydon Huntsingers, who were injured as a result of the crash. Jaydon was a minor at the time of the crash.

Defendant Knox's vehicle was insured through a policy issued by Horace Mann, which provided liability and underinsured motorist ("UIM") limits of $50,000 per person, $100,000 per accident. Plaintiffs' vehicle was insured by Ohio Security Insurance Company, which provided UIM coverage of $1 million per accident.

On 20 October 2023, Horace Mann communicated a conditional offer of settlement to Plaintiffs and the Huntsingers:

> Unfortunately, Horace Mann has limited coverage and will likely not be able to pay the entirety of each claim. For that reason Horace Mann hereby tenders its full policy limits

and will agree to make payment to your clients provided that all claims are resolved with Covenants Not to Execute against Mr. Knox and of Release as to Horace Mann.

On 8 November 2023, Plaintiffs' counsel responded to Horace Mann's counsel with an email stating:

> We are agreeable to settling the liability portion of this claim for Stephanie Welbourne and the Estate of Zachary Welbourne, for $25,000 each. I believe this will require court approval for the Estate of Zachary Welbourne, since there is a minor child involved. We are working on getting this estate opened as quickly as possible. We will also be continuing to pursue UIM funds after this. Please let me know how you want to proceed. Thank you.

Horace Mann responded a few minutes later, explaining "[o]nce you all agree, we can set that up and . . . we can do the paperwork for the court approval." Counsel for the Huntsingers responded shortly thereafter:

> I am agreeable to splitting the proceeds as recommended: 25% ($25K) to each taker.
>
> We will forward your tender offer to our UIM carriers today, giving them the 30 days to advance. If we hear back from them before the expiration of the 30 days, we will of course let you all know.

Horace Mann then responded to both parties that same day, stating:

> Per the emails from each of you, we will settle each claim for $25K. With four claimants, that will be $25K each. We will need to do a minor settlement for the Zachary Welbourne claim. Your clients will be responsible for any bills and liens, if any, and valid. We will prepare covenants that allow you to prosecute your UIM claims. I will need payment instructions from each of you and W9s. PLEASE EACH CONFIRM YOUR ASSENT.

On 29 November 2023, Plaintiffs' counsel sent an email to Horace Mann, stating "[w]e are agreeable to the $25,000 for [Plaintiff as an individual] and the $25,000 settlement for the Estate of [Mr. Welbourne]." Plaintiffs' counsel then acknowledged that the estate settlement would require court approval, but asked: "Is there any way the $25,000 for [Plaintiff as an individual] can go ahead and be released?"

Additionally, that same day, the Huntsingers' counsel informed Horace Mann that the Huntsingers had "three other UIM policies. One has tendered. One has waived their right to subrogation. The third, we have not heard back from yet." The Huntsingers' counsel then stated, "I believe you have $50k per-passenger in UIM as well, correct? Are you tendering the UIM as well?"

Horace Mann did not respond to Plaintiffs' counsel or the Huntsingers' counsel at that time.

Several days later, on 5 December 2023, Plaintiffs' counsel asked Horace Mann: "Were you able to find out if the $25,000 can be released promptly to [Plaintiff as an individual] for her portion of the liability settlement?" Horace Mann did not respond. Two days later, on 7 December 2025, the Huntsingers' counsel emailed Horace Mann a single case citation—*Benton v. Hanford*, 195 N.C. App. 88, *review denied*, 363 N.C. 744 (2009)—regarding UIM coverage.

On 11 and 12 December 2023, Plaintiffs' counsel informed Horace Mann that

Plaintiffs had received "an offer from the UIM carrier for their limits," explained they were "now working on a petition for court approval of the settlement for both the liability and UIM amounts[,]" and asked Horace Mann to call them "as soon as possible" to discuss the matter further. Horace Mann did not respond to either request.

On 22 December 2023, Plaintiffs' counsel wrote to Horace Mann and Attorney Robert McCune—the attorney representing Plaintiffs' UIM carrier—in an attempt to schedule the estate's settlement approval for the minor child for 19 January 2024. Horace Mann responded, "we will try to do it if possible."

After the holidays, on 5 January 2024, the Huntsingers' counsel wrote Horace Mann:

> My folks are wanting me to get some movement on this case. I sent you that *Benton* cite a month ago, though obviously the holidays happened in between the two. Still, I need to formally demand that you agree to pay the $25K liability and $25K UIM to each of my clients ($50K total to each, $100K payout from your policy to my clients collectively), within a week. I understand we will have to set up court approval on the younger boy. But please confirm within a week that you're agreeing to pay this out.

Horace Mann did not respond.

On 9 January 2024, Horace Mann emailed Plaintiffs' counsel:

> [Horace Mann] is in the process of wrapping up an issue related to [the Huntsingers] and intends that the settlements requiring approval to be taken care of at the same time—given they are seeking funds from the same Horace Mann policy. I hate to throw a wrench in the plans,

but we will need to resolve the approvals at the same time. Plaintiffs' counsel, after speaking with the Huntsingers' counsel, emailed Horace Mann, asking when Horace Mann believed it would resolve the issues related to whether it was going to pay UIM to the Huntsingers since they were passengers in the at-fault vehicle. Horace Mann responded it was working on a decision and asked Plaintiffs to reschedule the estate settlement approval hearing for Plaintiffs and the minor child, because Horace Mann wanted to resolve both minors'—Plaintiffs' minor child and Jaydon Huntsingers'—settlement cases at the same time. Plaintiffs' counsel responded to Horace Mann's counsel on 16 January 2024:

> Your client has tendered their pro rata policy limits over two months ago in exchange for covenants that prohibit us from pursuing your insured further but allow us to pursue our own first party coverage. Up until this point, we've agreed to accept those amounts for our two claims. Your tender was NOT contingent upon acceptance of other offers by other parties.
>
> I've repeatedly pressed to cooperatively determine a date on which our resolution can be approved by the court. [Horace Mann's counsel] agreed to a hearing date this Friday weeks ago and is withdrawing his agreement. . . .
>
> . . . .
>
> We are told that the holdup is not a dispute with us but rather relates to a dispute with [the Huntsingers' counsel] and his clients over access to certain UIM benefits under your client's policy[.] We have no intention of agreeing to wait until you resolve this with [the Huntsingers' counsel].
>
> Your failure to be prepared to proceed this Friday could result in your client losing the benefit of our current

agreement and subjecting him to, what will surely be, an
excess verdict.

Horace Mann responded:

> While I understand your frustration, nothing I have said
> should be construed as backing out of any agreement. To
> be crystal clear, we are not backing out of any agreement.
> I do just want to clarify that my understanding is Horace
> Mann made the full tender with the intention that any
> claims against [Defendants] and/or Horace Mann would be
> resolved. The tender was not made on a "pro rata" basis,
> and I understand that your office and [the Huntsingers'
> counsel's] office worked together to determine the split of
> the liability limits. . . .
>
> I am simply asking to momentarily postpone the hearing
> so that the same judge can handle both settlement
> approvals—which is always the best practice. . . .

On 29 January 2024, Plaintiffs' counsel emailed Horace Mann a time-limited

demand, stating in part:

> We will compromise the claims of Zachary's Estate and
> [Plaintiff as an individual] against [Defendants] and agree
> to a covenant not to enforce judgment against [Defendants]
> (see attached for the covenants we are prepared to execute)
> in return for the payment of $25,000 to the Estate of
> Zachary Welbourne and $25,000 to [Plaintiff as an
> individual]. I will allow you until Wednesday, January 31,
> 2024 to communicate your agreement to these terms and
> until February 5, 2024 to have delivered to me [the]
> payments[.]

Horace Mann did not respond by 31 January 2024.

On 1 February 2024, Plaintiffs filed a suit against Defendants, alleging

negligence against Defendant Knox Barbee and vicarious liability against Defendant

Geromy Barbee under the family purpose vehicle doctrine. Separate from the present appeal, however, Plaintiffs also filed a petition for approval of a wrongful death settlement (the "Petition") on 1 February 2024. The Petition sought court approval of the distribution of $475,000 of UIM proceeds from Ohio Security Insurance Company payable to Mr. Welbourne's estate, to be divided evenly between Plaintiff, as an individual, and the Welbournes' minor child. The trial court held a hearing on this Petition on 8 February 2024.

At the 8 February hearing, Plaintiffs' counsel explained to the trial court:

> So there is a primary liability carrier [that's] tendered $50,000. They have not been—they have not paid it yet and there's some delay in that. And quite honestly, Your Honor, I believe that they have missed an opportunity to pay that in good faith and there may be further litigation over that.

The trial court approved the distribution of UIM proceeds to the estate. In its order, the trial court noted:

> It further appears to the [c]ourt that [Defendants'] insurance carrier has tendered its liability limits for the accident by tendering to each of the four claimants the sum of $25,000.00.

> It further appears to the [c]ourt that Ohio Security Insurance Company provided an auto insurance liability policy. . . and that said policy provided [UIM] coverage with a single limit of $1,000,000.00 for each accident, reduced to $950,000.00 total available UIM coverage by virtue of the liability carrier [Horace Mann's] tender totaling $50,000.00 to [Plaintiffs].

Defendants then filed an answer on 20 February 2024 to Plaintiffs' negligence

and vicarious liability claims. A few weeks later, on 12 March 2024, Horace Mann agreed to pay the Huntsingers' UIM benefits and, on 21 March 2024, the Huntsingers accepted Horace Mann's offer of $25,000 UIM to each Huntsinger.

Then, on 20 April 2024, Defendants filed a Motion to Enforce the Settlement Agreement (the "Motion to Enforce") in the present appeal. The trial court held a hearing on the Motion to Enforce on 24 July 2024. At the hearing, Defendants' counsel argued that "[Plaintiffs' counsel] can't say to the court on February the 8th that there is a tender of $25,000" and "[w]e want you to use that so that we can get this million dollars, but at the same time, say we don't want to honor the agreement for the tender."

The trial court orally granted Defendants' Motion to Enforce, explaining its reasoning:

> [W]hat appears to me to be the conclusive, undisputed facts based on what I'm looking at, and they are that you did, in fact, make an offer to tender the whole policy limits to two groups of parties, that if you could settle at all, that you would pay those limits, and that they would not pursue the defendants in any further claims. . . . It appears, clearly, that . . . was accepted under those terms. In fact, it was even confirmed by [Plaintiffs' counsel] in his email.
>
> In my opinion – the only question, an agreement did exist as a matter of law. I don't think there's any question about that. Second issue, though, that I see that could possibly exist would be whether or not there was ability to backout of the deal. . . . It does appear, though that [Plaintiffs' counsel] has, after that date on February 8th, represented to the court while he couched it in terms of it was a tender, it appears to me that he represented – it was actually

represented to the court that there was in existence an agreement with the liability carrier that still existed that required – that allowed $50,000 more to be paid. So despite his letter, it appears to me that he has not canceled, formally canceled that agreement, and, in fact, made use of the agreement at a later time so the agreement still exists.

. . . .

[I]t appears to me that an agreement – as a matter of law, an agreement was made. That agreement is still on the table, and it is acknowledged by all the parties to the extent that the [c]ourt's going to enforce that agreement. You got to tender those mon[ies], though.

On 14 August 2024, before the trial court entered its written order on Defendants' Motion to Enforce, Plaintiffs filed a motion for reconsideration under Rule 54(b) (the "Motion to Reconsider"), and in the alternative, a motion to alter or amend the judgment pursuant to Rule 59(e) or Rule 60(b) (the "Motion to Amend"). In the Motion to Reconsider, Plaintiffs requested the trial court "to reconsider and revise the ruling made from the bench on July 24, 2024." On 22 August 2024, however, the trial court entered a written order on Defendants' Motion to Enforce Settlement Agreement (the "Order to Enforce"), and did not discuss either of Plaintiffs' recently filed motions.

About four months later, on 3 January 2025, the trial court entered an order denying Plaintiffs' Motion to Reconsider and Motion to Amend (the "3 January Order"). On 9 January 2025, Plaintiffs appealed the 3 January Order and the Order to Enforce.

## II. <u>Jurisdiction</u>

As a preliminary matter, Defendants filed a Motion to Dismiss, arguing Plaintiffs failed to timely appeal the Order to Enforce and requesting this Court dismiss the portions of Plaintiffs' appeal regarding the Order to Enforce. Specifically, Defendants argue: (A) the Order to Enforce was a final judgment, such that Plaintiffs' Motion to Reconsider pursuant to Rule 54(b) did not render it interlocutory; and (B) Plaintiffs' Motion to Amend pursuant to Rule 59(e) did not toll the appealing period. If this Court agrees with Defendants, Plaintiffs, in the alternative, (C) filed a petition for writ of certiorari ("PWC"). We address each argument, in turn.

### A. Rule 54(b)

Defendants first argue a portion of this appeal should be dismissed since the Order to Enforce "disposes of the cause as to all the parties and leaves nothing to be judicially determined between them by the trial court[,]" which is, thus, a final judgment subject to Rule 3 statutory time periods. Plaintiffs argue, however, that the Order to Enforce was not a final judgment where Plaintiffs' Motion to Reconsider pursuant to Rule 54(b) was still pending.

"In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure[,]" and "failure to follow the rule's prerequisites mandates dismissal of an appeal." *Bailey v. State*, 353 N.C. 142, 156 (2000). North Carolina Rules of Appellate Procedure Rule 3 requires that an appeal be taken

"within thirty days after entry of judgment," N.C.R. App. P. 3(c)(1), or "within thirty days after service upon the party of a copy of the judgment if service is not made within" three days after entry, N.C.R. App. P. 3(c)(2). The last subsection of Rule 3 provides:

> [I]f a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the thirty-day period for taking appeal [will be] tolled as to all parties until entry of an order disposing of the motion and then runs as to each party from the date of entry of the order or its untimely service upon the party, as provided in subdivisions (1) and (2)[.]

N.C.R. App. P. 3(c)(3).

With the exception of interlocutory orders that affect a "substantial right" or are certified pursuant to North Carolina Rule of Civil Procedure 54(b), Rule 3 statutory language generally permits an appeal only from a *final* judgment of the superior court. *See Veazey v. City of Durham*, 231 N.C. 357, 361 (1950) ("Judgments and orders of the Superior Court are divisible into these two classes: (1) Final judgments; and (2) interlocutory orders."). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Holland v. Harrison*, 254 N.C. App. 636, 640 (2017) (citation omitted). "Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather directs some further proceeding preliminary to the final decree." *Id.* (citation and internal quotation marks omitted). A judgment is entered when "it is reduced to writing, signed by the judge, and filed with the clerk

of court. The announcement of judgment in open court is the mere rendering of judgment, not the entry of judgment." *Green v. Branch*, 916 S.E.2d 824, 829 (N.C. Ct. App. 2025) (citation omitted).

Here, Plaintiffs filed the Motion to Reconsider, pursuant to Rule 54(b), on 14 August 2024, several days before the trial court entered its Order to Enforce on 22 August 2024. Plaintiffs' counsel conceded at the hearing that, after the oral rendering of the trial court's judgment, "there really is nothing left to pursue" "[u]nless [Defendants] had other UIM, which I don't think they have." The trial court noted that upon payment to Plaintiffs, "[t]his case would be subject to dismissal as a result of that settlement[,]" and "that agreement bars the claim here on payment of those things." Under *Holland*, this rendered ruling "dispose[d] of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court[,]" and was thus a final judgment. *See Holland*, 254 N.C. App. at 640.

Plaintiffs argue, however, that because the "[t]he trial court's [Order to Enforce] didn't address that pending motion or purport to be a final judgment[,]" the Order to Enforce was not appealable under Rule 3. Plaintiffs direct us to language from *Chappell v. Stallings*, in which our Supreme Court held that it is "improper for a court to take action in a cause while an undetermined motion is pending before it, unless the subsequent determination of the motion either way can not affect the validity of the action taken." 237 N.C. 213, 219 (1953) (holding that a superior court clerk could not confirm a sale when there was a pending, undetermined motion

challenging its validity before him). Plaintiffs essentially argue this Court should construe Rule 54(b) to allow complete and final rendered judgments to be reviewed by the trial court before they are entered. We disagree with this application of Rule 54(b).

Rule 54(b) "grants broader discretion to trial courts to amend their *interlocutory* orders before entry of a final judgment." *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC*, 250 N.C. App. 791, 798 (2016) (emphasis added). North Carolina Rules of Civil Procedure Rule 54(b) provides, in full:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes. In the absence of entry of such a final judgment, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and shall not then be subject to review either by appeal or otherwise except as expressly provided by these rules or other statutes. Similarly, in the absence of entry of such a final judgment, any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

N.C.R. Civ. P. 54(b). The plain language of "such judgment" and "such a final judgment" refers to the type of final judgment discussed directly above—"a judgment

as to one or more *but fewer than all of the claims*[.]" *Id.*; *see also State v. Beck*, 359 N.C. 611, 614 (2005) ("If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning."). Therefore, under the plain language of the statute, Rule 54(b) contemplates revision only to judgments "as to one or more but fewer than all of the claims[,]" and does not provide revision as to a final judgment of an entire case. N.C.R. Civ. P. 54(b).

This interpretation is confirmed by the Editor's official commentary discussing the drafting of this provision. In commenting on the reasoning behind Rule 54(b), the editors provided:

> The modification here is that when there is no just reason for delay and when there is an express determination to that effect, *the unit to which the finality concept shall be applied is by this rule made a smaller one.* Thus, if two claims are presented to the trial court and one of them is the subject of a disputed ruling, an appeal will lie if the ruling would have been appealable in an action involving that claim alone and if the judge makes the requisite determination.

N.C.R. Civ. P. 54(b) cmt. (emphasis added). This comment confirms the plain language of the statute. The authors drafted Rule 54(b) to deal with the "finality concept" as to "smaller" claims, rather than complete final judgment renderings. *See id.* Therefore, under the plain language of the statute, we hold that a party cannot use Rule 54(b) to move the trial court to reconsider a complete final judgment of a case, even where that final judgment has not yet been entered. *See* N.C.R. Civ. P.

54(b); *see also Tetra Tech Tesoro, Inc.*, 250 N.C. App. at 798. Rule 54(b) provides revision time only for judgments not "adjudicating *all* the claims and the rights and liabilities of all the parties." *See* N.C.R. Civ. P. 54(b) (emphasis added).

Here the trial court's oral decision to grant Defendants' Motion to Enforce the Settlement Agreement was a rendered final judgment of the entire case. *See Green*, 916 S.E.2d at 829; *see also* N.C.R. Civ. P. 54(b). Further, although this was not yet an entered judgment, it was a final judgment as the judgment prevented any further action by Plaintiffs, and Rule 54(b) could not help Plaintiffs. Thus, Plaintiffs' Rule 54(b) Motion to Reconsider was improper, and when the Order to Enforce was entered and notice was served on 22 August 2024, Plaintiffs were required to file a notice of appeal from the Order to Enforce on or before 23 September 2024. *See* N.C.R. App. P. 3(c).

**B. Rule 59**

Plaintiffs contend, however, that even if we conclude the Order to Enforce was not rendered interlocutory by Rule 54(b), the time to appeal it was tolled when Plaintiffs filed the Motion to Amend under Rule 59(e).

Rule 3 provides, in relevant part, that "if a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the thirty-day period for taking appeal [will be] tolled as to all parties until entry of an order disposing of the motion[.]" N.C.R. App. P. 3(c)(3). Here, Plaintiffs filed the Motion to Amend pursuant to Rule 59(e), and, therefore, the time to appeal the Order to Enforce

would be tolled if this motion was proper. *See id.*

Rule 59(e) provides that "[a] motion to alter or amend the judgment under section (a) of this rule shall be served not later than 10 days after entry of the judgment." N.C.R. Civ. P. 59(e). Under Rule 59(a), "[a] new trial may be granted" for the following grounds:

> (1) Any irregularity by which any party was prevented from having a fair trial;
> (2) Misconduct of the jury or prevailing party;
> (3) Accident or surprise which ordinary prudence could not have guarded against;
> (4) Newly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at the trial;
> (5) Manifest disregard by the jury of the instructions of the court;
> (6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
> (7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law;
> (8) Error in law occurring at the trial and objected to by the party making the motion, or
> (9) Any other reason heretofore recognized as grounds for new trial.
>
> On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

N.C.R. Civ. P. 59(a). "All of the enumerated grounds in Rule 59(a), and the concluding text addressing 'an action tried without a jury,' indicate that this rule applies only after a trial on the merits or, at a minimum, a judgment ending a case on the merits."

*Tetra Tech Tesoro, Inc.*, 250 N.C. App. at 797. This includes judgments ending a case on the merits from "bench trials." *Baker v. Tucker*, 239 N.C. App. 273, 278 (2015).

Plaintiffs and Defendants dispute what constitutes a judgment on the merits as required for a proper Rule 59(e) motion to toll an appeal. Defendants argue Plaintiffs' Motion to Amend pursuant to Rule 59(e) did not toll the appealing period because there was no trial on the merits, contending summary judgment is not a trial on the merits under *Bodie Island Beach Club Ass'n, Inc. v. Wray*, 215 N.C. App. 283 (2011) and *Doe v. City of Charlotte*, 273 N.C. App. 10 (2020). Plaintiffs argue, however, this is an open issue of law with contradictions, such that it is unclear what is a "trial on the merits" as required before Rule 59(e) tolls an appeal. Plaintiffs argue *Muse v. Charter Hosp. of Winston-Salem, Inc.*, 117 N.C. App. 468, 471, *aff'd*, 342 N.C. 403 (1995), contradicts this Court's later opinions in *Bodie Island* and *Doe*. Plaintiffs contend that under *Muse*, "Rule 59 motions can challenge final summary judgment orders—refuting the lynchpin of *Bodie* [*Island*] and *Doe*'s reasoning." We disagree with Plaintiffs' contention regarding Rule 59 and summary judgment regarding *Muse* and *Bodie Island*, and do not reach the alleged differences between *Muse* and *Doe* regarding Rule 59 and interlocutory orders.

In *Muse*, the plaintiffs brought a wrongful death action against the defendant hospital. *Id.* at 471. Although the opinion does not clarify the timeline of motions, at some point during trial, the trial court entered summary judgment "in open court" on the issue of punitive damages. *Id.* at 480. The plaintiffs then filed a Rule 59 motion

to reconsider the summary judgment based on newly found evidence. *Id.* at 480. The trial court granted the plaintiffs' motion, reconsidered the evidence, and reversed its summary judgment ruling. *Id.* After rendering its verdict, the jury awarded punitive damages. *Id.* at 471. On appeal, the defendant challenged only the timeliness of the plaintiffs' Rule 59 motion, which we overruled and held the motion had been served within ten days as required. *Id.* at 480–81.

Several years later, we decided *Bodie Island*. In *Bodie Island*, the plaintiffs sued a group of defendants, including the defendants SRS North Carolina Properties, LLC ("SRS"), to set aside a deed due to fraud and undue influence. *Bodie Island*, 215 N.C. App. at 284. After SRS failed to timely respond to the plaintiffs' complaint or request an extension of time, the plaintiffs filed a motion for summary judgment as to SRS, and "upon the [trial] court's own motion, default [judgment] was entered against SRS." *Id.* at 286 (citation modified). The trial court held a hearing on the plaintiffs' summary judgment motion. SRS did not attend that hearing, but instead sent a follow up letter "apologizing for having missed the . . . hearing for plaintiffs' summary judgment motion, asking the court to reconsider the entry of default against SRS, and requesting that should the trial court enter summary judgment against SRS, that the order be certified final and, therefore, immediately appealable." *Id.*

Subsequently, the trial court granted summary judgment in favor of the plaintiffs against SRS, writing that "the court has reviewed the substance of the requests for relief reflected in the Letter" and concluded that "SRS has made no

showing of good cause for any such relief." *Id.* In relevant part, SRS subsequently filed a motion with the trial court to set aside the summary judgment under Rule 59(a)(8) and (9), which the trial court denied. *Id.* at 294. On appeal to this Court, we held:

> Because both Rule 59(a)(8) and (9) are post-trial motions and because the [] case concluded at the summary judgment stage, the court did not err by concluding that "it was not proper to set aside default against [] SRS and vacate the summary judgment pursuant to Rule 59(a)(8) and (9)."

*Id.* at 294–95 (cleaned up).

Plaintiffs contend *Muse* allows the use of Rule 59 with summary judgments and that *Bodie Island* has created conflicting precedent. We disagree.

"[O]ne panel of the Court of Appeals may not overrule the decision of another panel on the same question in the same case." *In re Civil Penalty*, 324 N.C. 373, 384 (1989). The same question, however, was not presented in *Muse* and *Bodie Island*. In *Muse*, the question was whether the plaintiffs' Rule 59 motion had been timely served; we did not hold or explicitly discuss the relationship between Rule 59 and summary judgment. 117 N.C. App. at 480–81. In *Bodie Island*, however, we were explicitly presented with the question of whether the "trial court erred in denying SRS' Motion to Set Aside the Summary Judgment under N.C.[G.S.] § 1A–1, Rule 59(a)(8) and (9) when it found that '[a] Rule 59(a) motion is not a proper ground for relief from an entry of summary judgment.'" 215 N.C. App. at 294. We concluded it

was not. *Id.* at 294–95.

Here, because our courts have elected to treat motions to enforce settlement agreements as summary judgments, *see Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 694–95 (2009), and because Rule 59 is not a proper ground for relief from summary judgments, *see Bodie Island*, 215 N.C. App. at 294, Plaintiffs' Motion to Amend was not a proper Rule 59 motion. In holding Plaintiffs' Motion to Amend was not a proper Rule 59 motion, we further hold Plaintiffs' appeal time was not tolled. *See N.C. Alliance for Transp. Reform, Inc. v. N.C. Dep't of Transp.*, 183 N.C. App. 466, 470 (2007) ("[W]hen a party makes a motion pursuant to Rule 59 that is not a proper Rule 59 motion, the time for filing an appeal is not tolled." (citations omitted)). Accordingly, where Plaintiffs failed to timely appeal the Order to Enforce, *see* N.C.R. App. P. 3, we do not have jurisdiction to review that portion of Plaintiffs' appeal.

## C. PWC

In the event we would conclude Plaintiffs did not timely appeal the Order to Enforce, Plaintiffs filed a PWC pursuant to Rules 2 and 21 of the North Carolina Rules of Appellate Procedure.

Rule 2 allows this Court to "suspend or vary the requirements" of the North Carolina Rules of Appellate Procedure in order "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest[.]" N.C.R. App. P. 2. "Rule 2[, however,] may not be used to reach the merits of an appeal in the event of a jurisdictional default." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*,

362 N.C. 191, 198 (2008); *see also Bailey,* 353 N.C. at 156 ("In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 . . . . The provisions of Rule 3 are jurisdictional, and failure to follow the rule's prerequisites mandates dismissal of an appeal." (citations omitted)). Thus, we decline to grant Plaintiffs' request to review the Order to Enforce pursuant to Rule 2, and we proceed to analyze Rule 21.

Pursuant to Rule 21, this Court may grant a PWC "in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1). A PWC, though discretionary, is "to be issued only for good or sufficient cause shown, and it is not one to which the moving party is entitled as a matter of right." *Womble v. Moncure Mill & Gin Co.,* 194 N.C. 577, 579 (1927) (emphasis added). Our Supreme Court recently clarified the test for this Court to use when determining whether to issue the writ of certiorari:

> First, a writ of certiorari should issue only if the petitioner can show "merit or that error was probably committed below." This step weighs the likelihood that there was some error of law in the case.

> Second, a writ of certiorari should issue only if there are "extraordinary circumstances" to justify it. We require extraordinary circumstances because a writ of certiorari "is not intended as a substitute for a notice of appeal." If courts issued writs of certiorari solely on the showing of some error below, it would render meaningless the rules governing the time and manner of noticing appeals.

> There is no fixed list of "extraordinary circumstances" that warrant certiorari review, but this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or "wide-reaching issues of justice and liberty at stake."

*Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, 384 N.C. 569, 572–73 (2023) (citations omitted). In our discretion, we decline to grant Plaintiffs' PWC because Plaintiffs have failed to show extraordinary circumstances to justify it. *See id.* at 573. Thus, because we do not have a proper appeal before us from the Order to Enforce, and because we deny Plaintiffs' PWC, we deny Defendants' Motion to Dismiss this portion of the appeal since we lack appellate jurisdiction, and we review only Plaintiffs' appeal from the trial court's denial of Plaintiffs' Motion to Amend pursuant to Rule 59(e) and Rule 60(b).

## III. <u>Standard of Review</u>

This Court reviews a trial court's denial of Rule 59 and Rule 60(b) motions for an "abuse of discretion." *Davis v. Davis*, 360 N.C. 518, 523 (2006). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are 'manifestly unsupported by reason.'" *Id.* at 523 (quoting *Clark v. Clark,* 301 N.C. 123, 129 (1980)).

## IV. <u>Analysis</u>

On appeal, Plaintiffs argue the trial court erred in its 3 January Order by denying Plaintiffs' Motion to Reconsider pursuant to Rule 54(b), and Plaintiffs' Motion to Amend pursuant to Rule 59(e) or Rule 60(b). We disagree.

First, we address the trial court's denial of Plaintiffs' Motion to Reconsider

pursuant to Rule 54(b) and Motion to Amend, specifically as to Rule 59(e). Because we have determined this specific use of Rule 54(b) was improper regarding a non-interlocutory order, *see* N.C.R. Civ. P. 54(b); *see also Tetra Tech Tesoro, Inc.*, 250 N.C. App. at 798, and Plaintiffs' Rule 59(e) motion was improper where there was no trial on the merits, *see Bodie Island*, 215 N.C. App. at 294, we overrule Plaintiffs' arguments and affirm the trial court's denial of Plaintiffs' Motion to Reconsider pursuant to Rule 54(b) and Motion to Amend, specifically as to Rule 59(e).

Next, we address the trial court's denial of Plaintiffs' Motion to Amend pursuant to Rule 60(b). In Plaintiffs' Motion to Amend, Plaintiffs did not specify which subsection of Rule 60(b) they were relying upon. "If a party is unsure under which of subsections (1), (2) and (3) or (6) of Rule 60(b) to proceed, 'he need not specify if his motion is timely and the reason justifies relief.'" *McGinnis v. Robinson*, 43 N.C. App. 1, 7 (1979) (quoting *Brady v. Town of Chapel Hill*, 277 N.C. 720, 723 (1971)). In the Motion to Amend, Plaintiffs made two arguments: first, that Defendants' counsel made misrepresentations to the trial court, and second, that the trial court erred in its understanding of the legal definition of "tender."

Rule 60(b) provides several reasons why a court may relieve a party from a final judgment or order, including as relevant here,

> (3) Fraud (whether heretofore denominated intrinsic or extrinsic), *misrepresentation*, or other misconduct of an adverse party; [or]
>
> . . . .

(6) Any other reason justifying relief from the operation of
the judgment.

N.C.R. Civ. P. 60(b) (emphasis added). "Rule 60(b)[, however,] provides no specific relief for errors of law." *Davis*, 360 N.C. at 523 (holding that because the defendant "based his Rule 60 motion on alleged errors of law[,]" and Rule 60 does not provide relief from errors of law, the defendant "failed to demonstrate that the trial court abused its discretion in denying [his] Rule 60(b) motion"); *see also Jenkins v. Richmond Cty.*, 118 N.C. App. 166, 170 (1995) ("Motions pursuant to Rule 60(b) may not be used as a substitute for appeal.").

Here, Plaintiffs contend that at the hearing on Defendants' Motion to Enforce, "Defendants' counsel asserted that [Plaintiffs'] counsel had represented to the court that approved [the] UIM settlement that [Plaintiffs] 'settled' [the] liability claims." Specifically, Plaintiffs argue that, at the 24 July 2024 hearing, Defendants' counsel misrepresented to the trial court what had been said by Plaintiffs' counsel at the 8 February 2024 hearing regarding the Petition—whether Plaintiffs' counsel represented that there had only been a tender or acknowledged a settlement. We disagree.

The trial court acknowledged this exact issue in its ruling at the 24 July 2024 hearing, explaining that while Plaintiffs' counsel had "couched it in terms of it was a tender, it appears to me that he represented – it was actually represented to the court that there was in existence an agreement with the liability carrier that still existed[.]"

We further note that Defendants provided the trial court with a copy of the transcript from the 8 February 2024 hearing, which indicates to us the trial court was able to make its own determination about what was discussed at that hearing. Therefore, we conclude the trial court did not abuse its discretion in denying Plaintiffs' Motion to Amend for misrepresentation. *See Davis*, 360 N.C. at 523.

Moreover, Plaintiffs' second argument—that the trial court misunderstood the legal definition of "tender"—effectively asserts that the trial court made an error of law. As stated above, however, Rule 60 does not provide relief from errors of law. *See id.*; *see also Jenkins*, 118 N.C. App. at 170. As such, we conclude the trial court did not abuse its discretion in denying Plaintiffs' Motion to Amend. *See Davis*, 360 N.C. at 523.

## V. <u>Conclusion</u>

Upon careful review, we conclude we do not have jurisdiction to hear Plaintiffs' first argument regarding the Order to Enforce, and we affirm the trial court's denial of Plaintiffs' Motion to Amend.

AFFIRMED.

Judges COLLINS and MURRY concur.